Carmen Rita Pedrosa de SAN MIGUEL, Plaintiff-Appellant,

v.

Jose A. Blanco LUGO et al., Defendants-Appellees.

No. 76–1456.

United States Court of Appeals, First Circuit.

Argued Feb. 10, 1977.

Decided Aug. 3, 1977.

---

3. The plaintiff also charges the trial judge with bias. There is no merit in this claim.

Jesus Hernandez Sanchez, Rio Piedras, P. R., for plaintiff-appellant.

Maggie Correa Aviles, Asst. Sol. Gen., Dept. of Justice, San Juan, P. R., with whom Roberto Armstrong, Jr., Acting Sol. Gen., San Juan, P. R., was on brief, for defendants-appellees.

Before CAMPBELL, Circuit Judge, VAN OOSTERHOUT, Senior Circuit Judge,* IN-GRAHAM, Senior Circuit Judge.**

VAN OOSTERHOUT, Circuit Judge.

Plaintiff Mrs. San Miguel filed a complaint alleging that she was discriminatorily suspended without pay for one week commencing June 5 and ending June 11, 1975 for political reasons. She alleges her suspension was in violation of 42 U.S.C. §§ 1983 and 1985 and her first, fifth and fourteenth amendment constitutional rights. Jurisdiction is based on 28 U.S.C. § 1343.

Plaintiff has been an employee of Puerto Rican Land Authority working for its subsidiary Puerto Rico Sugar Corporation for fourteen years. Defendants are officers of the Land Authority and Sugar Corporation.

The trial court, in a 32 page unreported opinion, exhaustively outlined the pleadings, the relevant facts and the applicable law and upon the basis thereof dismissed plaintiff's complaint on defendants' motion for summary judgment. This timely appeal followed. We affirm.

The trial court in a pretrial order directed the parties to file affidavits which would be considered the direct testimony of the affiants, with the right of the opposing party to call the affiants for cross examination. The court also received in evidence as part of the pretrial procedure the rules and regulations of the Land Authority and the Sugar Corporation and suspension letters delivered to plaintiff and Mrs. Gonzalez. Plaintiff offered only her own affidavit. Defendants filed ten affidavits of parties familiar with the facts giving rise to the suspension. After such affidavits were filed, the defendants moved for summary judgment, including therein the ground that the record before the court conclusively showed that there had been no violation of plaintiff's civil or constitutional rights.

The trial court, after detailing the record evidence before it, stated:

From these facts it becomes clear that the disciplinary measures taken against plaintiff originated from an incident between her and another employee. This incident has been described by witnesses Florita Monroig and Delia Rodriguez Pimentel. (See *Affidavits* subscribed by these witnesses.) The testimonies of both Miss Monroig and Mrs. Pimentel show that the incident of June 3, 1975 to which plaintiff was a party was one of a personal nature. Delia Rodriguez Pimentel stated:

"2. That on the third day of June, 1975, approximately between ten and eleven in the morning (10:00–11:00 a.m.), Mrs. Carmen Rita Pedrosa de San Miguel came into my office to look for some documents; she mentioned that she had an incident on the stairs with Mrs. Maria de Jesus Clemente de Gonzalez that morning.

"3. In those moments, Mrs. Gonzalez came into my office and asked Mrs. San Miguel just what was the problem that Mrs. San Miguel had with her (Mrs. Gonzalez).

"4. Mrs. San Miguel answered that Mrs. Gonzalez was not "that fat", that Mrs. Gonzalez didn't occupy all of the stairways, and that the problem was that Mrs. Gonzalez was an 'alcahueta

---

de la otra'. ('La otra' or the 'other one' is in reference to a fellow worker whose name is Esther Bonilla.)

"5. Mrs. Gonzalez answered that that was why Mrs. San Miguel was not liked in the Puerto Rico Land Authority because she had fame (sic) of being a gossip.

"6. Mrs. Gonzalez left the office, Mrs. San Miguel immediately opened the door and answered that she was a gossip, but that at least she was no nigger. Upon hearing this Mrs. Gonzalez came into the office again and slapped Mrs. San Miguel's face . . . ."

These facts are in no way disputed by plaintiff's affidavit. We fail to see discriminatory or a "political" reason for plaintiff's suspension. We believe that the incident that took place was of a purely personal nature; that it was of such severity as to merit disciplinary action. We fail to see a "political discrimination" by defendants which could be equated to a violation of plaintiff's right to free association, and thus give rise to a claim under Title 42, United States Code, Section 1983. (See *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)).

Let it be noted that we are not here dealing with a discharge, but with a suspension from work taken as a disciplinary measure. The regulations of the agency in the case at bar provide for the investigation of the incident giving rise to the need for disciplinary measures. This was done in plaintiff's case; both parties to the incident were heard as well as other witnesses; the need for disciplinary measures was discussed among the several officers; and plaintiff was notified in writing of defendant's determination to suspend her from work and salary for a period of one week, and the grounds thereto.

The Land Authority's Personnel Norms and Procedures, which were before the court, under paragraph 24 of Conduct and Disciplinary Norms, provide:

*Fighting or intenting [sic] aggression* is not permitted. The first infraction to this norm will result in the definite separation from employment.

Three L.P.R.A. 670 provides:

An appointing authority may, for disciplinary purposes, suspend without pay or with reduced pay, any regular or working test employee in his agency for such length of time as he considers appropriate not exceeding thirty (30) days in any twelve-month period.

Plaintiff was given and accepted an opportunity to appear before the disciplinary board. She was informed of the charges against her and in no way contradicted the conduct described in the extract of the court's opinion hereinabove. We are satisfied from an examination of the record that plaintiff was properly suspended without pay for one week.

Plaintiff's claims of political discrimination are largely conclusory both in her pleadings and affidavit. She established that she is a member of the New Progressive Party and that since January 1973, as a result of the 1972 elections, her employer has been in the control of the Popular Democratic Party.

As noted by the trial court, the plaintiff was given a promotion and salary increase in July 1973, and in July 1974 was raised to classification of Executive Secretary I from Secretary IV, with a salary increase from $520 to $590.

Mrs. Gonzalez, the other party engaged in the quarrel, is a member of the party in control. She was suspended for thirty days for her part in the quarrel.

The affidavits of the disciplinary board show that they intentionally imposed lenient penalties because the participants were long-time employees with a good record who had satisfactorily performed their duties.

In *Bishop v. Wood,* 426 U.S. 341, 349, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976), the Supreme Court holds: "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies."

While we do not believe the record establishes any political discrimination was involved in the disciplinary proceedings, we observe that the record clearly supports the trial court's determination upholding the one-week suspension of the plaintiff for disciplinary reasons. The disciplinary board was warranted in reaching its conclusion with respect to the suspension independently of any political considerations. *Mt. Healthy Board of Education v. Doyle,* 429 U.S. 274, 283–287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

*The judgment is affirmed.*