Jose A. REYES CAÑADA,
et al. Plaintiffs,

v.

Cesar REY HERNANDEZ,
et al. Defendants

No. CIV. 01–1542(JAG/GAG).

United States District Court,
D. Puerto Rico.

Sept. 30, 2003.

Pablo Landrau Pirazzi, Aldarondo & López Bras, San Juan, PR, for Plaintiffs.

Ivette M. Berríos Hernández, Landrón & Vera, LLP, San Juan, PR, for Defendants: Lizzette Pillich and Carmen Motta.

Luisselle Quiñones Maldonado, Llovet Zuriñaga & López, PSC, San Juan, PR, for Defendant César Rey.

## OPINION AND ORDER

GELPI, United States Magistrate Judge.

This is an action for injunctive relief and compensatory and punitive damages brought by José A. Reyes Cañada and others ("plaintiffs") against César Rey Hernaádez ("Rey"), Lizzette Pillich Otero ("Pillich") and Carmen Motta Montañez ("Motta") in their individual and official capacity as executives of the Puerto Rico Department of Education. The plaintiffs claim that Rey, Pillich, and Motta took adverse employment actions against them because of their political affiliation. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, alleging violations of their First and Fourteenth Amendment rights under the Constitution of the United States and under the laws of Puerto Rico, specifically, Articles 1802–1803 of the Puerto Rico Civil Code, P.R. Laws. Ann. tit. 31 §§ 5141–142 *et seq.*.

Rey, Pillich, and Motta ("defendants") now move, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, to dismiss plaintiffs' section 1983 claims, as well as their claims arising under the laws of Puerto Rico. (*See* Docket Nos. 118–119). The issues presented are whether plaintiffs have failed to establish a genuine issue of material fact with respect to the adverse employment actions taken against

them and whether defendants are entitled to qualified immunity.

## I. *Factual Background*

On November 7, 2000, general elections were held in Puerto Rico. The then incumbent New Progressive Party ("NPP") was defeated by the Popular Democratic Party ("PDP"). As part of newly elected Governor Sila María Calderón's administration plan, she named co-defendant Rey as Secretary for the Department of Education ("Department"). Rey took office on January 8, 2001. In turn, he appointed defendant Motta as Director of the Legal Division and Pillich as Assistant Secretary for Human Resources and Development. The plaintiffs allege that upon Rey taking office in January 2000, Rey, Pillich and Motta illegally discharged, transferred, demoted and/or suspended plaintiffs based on their political affiliation. With the exception of one group of plaintiffs, the salient facts are set forth when each of the plaintiffs' claims are addressed.

There are seven plaintiffs who are employed as drivers for the Department. These plaintiffs are: José A. Reyes Cañada, Jesús Martínez Vélez, Juan F. Martínez Nieves, Harry J. Rivera Lugo, Miguel A. Vega Barreiro, Ricardo J. Castillo Montesino, and José A. Rivera Torres. For simplicity, the Court has combined these plaintiffs into one group called the "driver plaintiffs." The other plaintiffs involved in this case are Roberto Ramírez, Edith Pérez Posso, Iris Rivera Ruiz, Israel I. Pabón Torres and Luis A. García González, who held various other positions in the Department.

## II. *Summary Judgment Standard* [1]

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When deciding a motion for summary judgment, the court must view the record in the light most favorable to the party opposing summary judgment, including all reasonable inferences in the nonmoving party's favor. *See id.* "If, after canvassing the material presented, the district court finds *some* genuine factual issue remains in the case, whose resolution one way or the other *could* affect its outcome, the court must deny the motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The movant's burden is particularly rigorous when the disputed issue involves questions of motive or intent, since in these cases jury judgments about credibility are typically thought to be of special importance." *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 895 (1st Cir.1988). In a discriminatory employment action case, a plaintiff, "will rarely, if ever, be able to produce a 'smoking gun' that provides direct, subjective evidence of an employer's animus." *Stepanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir.1983). "Rather, a plaintiff must try to convince the fact-finder to draw an inference from a broad array of circumstantial and often conflicting evidence . . . ." *Id.* Even in these cases, however, the Court will not refuse to grant summary judgment in favor of the defendant if the plaintiff's claim rests merely

---

**1.** The Court notes that all parties have complied with Local Rule 311.12, which has recently been renumbered as Local Rule 56(b) and (c).

upon "conclusory allegations, improbable inferences, and unsupported speculation.'" *Suarez v. Pueblo Int'l Inc.*, 229 F.3d 49, 53 (1st Cir.2000) (citing *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

## III. *Legal Analysis*

▄▄▄ In *Mt. Healthy School District v. Doyle*, the Supreme Court established a two-part burden-shifting analysis for evaluating political discrimination claims of public employees. 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In order to assert a colorable claim of political discrimination, the plaintiff bears the initial burden of showing that his or her political affiliation was a "substantial or motivating" factor behind the challenged employment decision. *Id.* If the plaintiff does so, the burden shifts to the defendant to show by a preponderance of the evidence that the same employment decision would have been made even in the absence of the plaintiff's protected conduct. *Id.* Once the defendant proffers a nondiscriminatory reason for the adverse employment action, the plaintiff then has a chance to discredit said reason "by adducing evidence that discrimination was more likely than not a motivating factor." *Padilla–García v. Rodríguez*, 212 F.3d 69, 78 (1st Cir.2000). Unlike the burden shifting paradigm under Title VII, the defendant in a political discrimination case bears the burden of persuading the factfinder that his/her reason for the adverse employment action is credible. *Padilla–García*, 212 F.3d at 78; *compare Acevedo–Díaz v. Aponte*, 1 F.3d 62, 67 (1st Cir.1993) (noting *Mt. Healthy* defense shifts burden of persuasion to defendant once plaintiff bears initial burden) *with Tex. Dep't of Comty. Affairs v. Bur-*

*dine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (clarifying burden shifting in Title VII cases places burden of production on employer but emphasizing plaintiff-employee retains burden of persuasion at all times). "Accordingly, once the burden of persuasion shifts to the defendant-employer, the plaintiff-employee will prevail unless the factfinder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons." *Acevedo–Díaz*, 1 F.3d at 67.

### A. *Career Employees* [2]

#### 1. *"Driver Plaintiffs"*

The Department of Education employed plaintiffs as chauffeurs assigned to the Office of the Secretary to drive various upper echelon Department officials. (*See* Docket 118, p. 3 ¶ 4). Approximately one month and two weeks after Rey became Secretary, plaintiffs received a letter from defendant Pillich informing plaintiffs that they were being transferred to the General Transportation Office ("GTO"). (*See* Docket 127, p. 7, ¶ 1). Pillich's letter stated that plaintiffs' transfers were due to "service needs" at the GTO. (*See* Docket 126, Appendix HW: 1–A).

According to plaintiffs, the defendants transferred them to the GTO because the defendants were well aware, and disagreed with, plaintiffs' political affiliation with the NPP. The plaintiffs also allege that upon their transfer to the GTO, their former driving positions were filled by employees affiliated with the PDP. (*See* Docket 128, p. 6 ¶ 4). The plaintiffs describe their new working conditions at the GTO as hostile

---

**2.** There are two types of positions in public employment in Puerto Rico: trust and career. Whereas an employee who holds a trust position normally can be readily removed, a ca-

reer employee can only be discharged for "good cause." P.R. Laws. Ann. tit. 3 §§ 1336(4), 1346 (1989).

and characterize their transfers as demotions.[3] The Court finds that plaintiffs have proffered sufficient *prima facie* evidence of political discrimination. Thus, the burden of persuasion shifts to the defendants to provide a nondiscriminatory reason for the transfer of plaintiffs to the GTO.

According to defendants, plaintiffs were transferred to the GTO because more drivers were needed to serve the GTO location. (*See* Docket 126, Appendix HW: 1–A). Defendants state that "as long as plaintiffs kept the same duties, responsibilities, and salary" the Department could transfer plaintiffs to any office at any time. (*See* Docket 118, p. 18 ¶ 1); *see also* Public Personnel Act, § 1351(7), P.R. Laws Ann. tit. 3 §§ 1350–1351 *et seq.* This defense begs the question. Although defendants could have legally transferred plaintiffs under the statute, "the government may not rely on a basis that infringes their constitutionally protected interests to deny [plaintiffs] the benefit of their prior [driving] positions." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 78, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). The defendants have the burden of persuading the factfinder that the nondiscriminatory reason is valid, specifically, that plaintiffs were transferred because the GTO had legitimate "service needs" plaintiffs could perform. The record is void of any evidence offered by defendants to demonstrate that the GTO in fact required more drivers. Defendants simply state that they were within their statutory rights to transfers plaintiffs if they retained the same duties, responsibilities, and pay.

■■ Under *Rutan*, promotions, transfers, and recalls based on political affilia-

tion are an impermissible infringement on public employees' First Amendment rights. 497 U.S. at 74, 110 S.Ct. 2729. Plaintiffs have alleged that their transfer is tantamount to a demotion. Additionally, plaintiffs have presented evidence that contradicts the defendants' proffered reason for their transfers. At the point plaintiffs were transferred, the GTO had approximately thirty (30) drivers for nine (9) vehicles in the GTO. (*See* Docket 127, p. 11 ¶ 1). According to plaintiffs, this would leave approximately twenty (20) drivers idle if all GTO vehicles were being used. *Id.* The Court finds defendants' proffered nondiscriminatory reason unpersuasive. For the reasons stated herein, the dispute over motivation regarding the plaintiffs' transfer to the GTO precludes summary judgement. This Court thus DENIES the defendants' motion for summary judgment with respect to the driver plaintiffs.

### 2. *Plaintiff Roberto Ramírez*

Plaintiff Roberto Ramírez has held several trust positions within the Department of Education since 1976. Ramírez's most recently held trust position was as Special Assistant IV for the Ponce Region of the Department's Public Schools Improvement Office ("OMEP"). In September 2000, Ramírez's asked then Secretary of Education, Víctor Fajardo, to convert his trust position into a career position. Fajardo did so, and Ramírez's new career title was Executive Director II for the Ponce Region of the OMEP.

On January, 1, 2001, the same day that defendant César Rey took office, several persons were designated as Regional Coordinators and assigned to various OMEP locations. (*See* Docket 118, p. 5

---

**3.** Plaintiffs state that they are constantly passed over for work assignments in favor of drivers affiliated with the PDP, forced to occupy a "closet like" office, and are verbally harassed by the GTO secretary and other drivers affiliated with the PDP. (*See* Docket 127, p. 11 ¶ 1).

¶ 3). A regional coordinator affiliated with the PDP was assigned to Ramírez's office in Ponce. Ramírez alleges that not soon after his arrival the new coordinator began to usurp his functions as OMEP Regional Director. (*See* Docket 127, p. 11 ¶ 2). According to Ramírez, the regional coordinator was assigned to Ponce's OMEP office to circumvent Ramírez's authority because Rey knew of and disagreed with Ramírez's affiliation with the NPP. *Id.* Ramírez further alleges that his salary differential was eliminated without a hearing, and his beeper and cellular phone were reassigned to the regional coordinator on January 16, 2001. Ramírez also asserts that his primary job responsibilities have been transferred to the regional coordinator. At the time of filing, Ramírez was still employed as Executive Director II for the Ponce Region of the OMEP. *Id.*

Under *Rutan,* discharges, promotions, transfers and recalls based on political affiliation are an impermissible infringement on public employees' First Amendment rights. 497 U.S. at 74, 110 S.Ct. 2729. The harm that Ramírez alleges, however, does not fall within one of *Rutan*'s prohibited employment actions. Ramírez still occupies the same post as he did when Rey took office.

Prior to the Supreme Court's ruling in *Rutan,* the Court of Appeals for the First Circuit decided *Agosto–de–Feliciano v. Aponte–Roque,* which sets forth the "unreasonably inferior" doctrine to address complaints of discrimination stemming from adverse employment actions that fall short of actual discharge. 889 F.2d at 1218. Specifically, the *Agosto–de–Feliciano* decision states that "the First Amendment's proscription of patronage dismissals encompasses situations in which a government employer's actions fall short of discharge but nonetheless result in an altered work situation 'unreasonably inferior to the norm' for the position in question." 889 F.2d 1209, 1218 (1st Cir.1989).[4] Ramírez has alleged a pay reduction and a reduction in benefits. (*See* Docket 127). He also claims that his authority has been supplanted by an employee who is affiliated with the PDP. *Id.* Whether Ramírez's allegations amount to an altered work environment that is "unreasonably inferior to the norm" is a question of fact for the jury. The Court thus finds that Ramírez has proffered sufficient *prima facie* evidence of political discrimination. Accordingly, the burden shifts to the defendants to provide a nondiscriminatory reason for Ramírez's reduction in pay and his loss of authority to the regional coordinator.

According to defendants, Ramírez's career position as Executive Director II for the Ponce Region of the OMEP is in violation of the Personnel Law 1351(7), which states, "[t]he change of category of a confidential employee to a career position shall only be authorized when a change occurs in the functions or in the organizational structure of the agency so justifying it . . . ." Public Personnel Act, ("Act") § 1351(7), P.R. Laws Ann. tit. 3 §§ 1350–1351.

Defendants cite a personnel statute as their nondiscriminatory reason to reduce Ramírez's salary and job responsibilities. Thus, defendants must demonstrate that there was no organizational or functional reason for former Secretary Fajardo to convert Ramírez's trust position into a

---

**4.** "It is an interesting question whether some vestige of the unreasonably inferior doctrine survives *Rutan,* thereby providing a sort of . . . intermediate First Amendment haven for employees wounded by slings and arrows less damaging than those official actions described by the *Rutan* court." *Acosta–Orozco v. Rodriguez–de–Rivera,* 132 F.3d 97, 101 n. 5 (1st Cir.1997).

career position. The record reveals that it was Ramírez whom requested that Fajardo change his title from trust employee to career employee. The record further reveals that Ramírez's duties and responsibilities in his newly created career position were exactly the same as they had been in his former trust position. Defendants also support their argument by noting that every other employee who occupies a regional director position with the OMEP occupies a position of trust. The Court finds that the defendants' proffered *Mt. Healthy* defense is sufficient to meet their burden for providing a nondiscriminatory reason for their employment action. The burden thus shifts back to Ramírez to discredit the proffered nondiscriminatory reason.

Ramírez, however, fails to provide sufficient evidence to support his claim that the change in his employment status, being in violation of the Personnel Act, was politically motivated. The Court thus **GRANTS** the defendants' motion for summary judgment with respect to plaintiff Ramírez.

### 3. *Plaintiff Edith Pérez Posso*

■ Plaintiff Edith Pérez Posso ("Pérez") began working for the Department as a Legal Technician in December 2000. Her employment was characterized as probationary with her probation period ending on March 10, 2001. On December 31, 2000, Pérez underwent the first evaluation of her probationary period. She satisfied all listed criteria. According to Pérez, "she passed with flying colors." (*See* Docket 127, p. 12 ¶ 2). On February 27, 2001, Pérez underwent the second and final evaluation of her probationary period. Defendant Motta conducted the evaluation. Pérez failed six (6) out of eight (8) criteria. (*See* Docket 118, p. 6 ¶ 8). According to Pérez, Motta had no previous exposure to Pérez's work and had no objective infor-

mation upon which to base her evaluation. Pérez alleged that Motta was aware of her affiliation with the NPP and gave Pérez a poor evaluation because Motta had allegedly stated several times that "she wanted to clean house of the NPP." (*See* Docket 127, p. 12 ¶ 2). Pillich subsequently discharged Pérez based on her evaluation.

Defendants claim that Pérez "was in a career set position, with a probation period [Motta] did not approve, therefore she was terminated." (*See* Docket 118, p. 19 ¶ 1). Neither party discussed the substance of Pérez's review. Pérez disputes these facts, stating that her performance was excellent and that her affiliation with the NPP was the only reason she was given a poor review and subsequently terminated. Because of the disputed fact regarding defendants' motivation for discharging Pérez, this Court thus **DENIES** summary judgment.

### B. *Trust Employees*

■ Unlike career employees, a trust employee's position is intertwined with policymaking and terminable without cause. "The conditioning of public employment on political affiliation can survive constitutional challenge only if it furthers a vital governmental interest by a means least restrictive of first amendment freedoms." *Elrod v. Burns*, 427 U.S. 347, 360, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In *Branti v. Finkel*, the Supreme Court held that "the ultimate inquiry ... is whether the hiring authority can demonstrate that party affiliation in an *appropriate requirement for the effective performance* of the public office involved." 445 U.S. 507, 519, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (emphasis added). The *Elrod–Branti* doctrine provides some protection for government officials to make employment decisions based on political affiliation, but that pro-

tection is not an absolute.[5] *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241 (1st Cir.1986). "The First Amendment must yield to the vital interest of preserving representative government whenever elected officials choose to replace underlings employed in 'policymaking' or 'confidential' positions." *Berrios–Cintrón v. Cordero,* 976 F.Supp. 110, 114 (D.P.R.1997). In *Jiménez Fuentes,* the First Circuit established a two-step analysis designed to aid the court in determining if political affiliation is an "appropriate requirement for the effective performance of the public office involved." 807 F.2d at 241.

■ The first step of the *Jiménez Fuentes* approach is to ask "whether the position at issue, no matter how policy influencing or confidential it may be, relates to partisan political interests ... [or] concerns." *Jiménez Fuentes,* 807 F.2d at 241 (quoting *Branti,* 445 U.S. at 519, 100 S.Ct. 1287). The second step for the court's determination is whether "the particular job resembles that of a policymaker, a communicator, or a privy to confidential information." *Jiménez Fuentes* 807 F.2d at 242. For a position to fit within the *Elrod–Branti* exception, both steps of the *Jiménez Fuentes* test must be satisfied. If the first step is not met, the court need not proceed to the second step.

To meet the requirements of the first step, the position "need only involve decision making on issues where there is room for political disagreement on goals or their implementation." *Méndez–Palau v. Rohena–Betancourt,* 813 F.2d 1255, 1258 (1st

Cir.1987). The second step involves a further inquiry into the "inherent powers and privileges of the position ... and not to the duties actually carried out by a particular employee." *Jiménez Fuentes,* 807 F.2d at 241.

### 1. *Plaintiff Iris Rivera Ruiz*

■ Plaintiff Iris Rivera Ruiz ("Rivera") was promoted to the position of Director of Sexual Harassment in January 2000. The First Circuit has stated that a job description is considered the best source for determining whether a particular position falls within an exception of the *Elrod–Branti* doctrine. *Ortiz–Piñero v. Rivera–Arroyo,* 84 F.3d 7, 13 (1st Cir. 1996). Neither the defendants nor the plaintiffs have submitted a job description to aid this Court in determining whether Rivera's position relates to partisan political interests. The record contains minimal references to the position. Accordingly, this Court is unable to determine the issue of whether Rivera's position is a trust position. This Court thus **DENIES** the defendants' motion for summary judgment with respect to plaintiff Rivera.

### 2. *Plaintiff Israel I. Pabón Torres*

Plaintiff Israel I. Pabón Torres (Pabón) was appointed to coordinate the "Close Up" project in January 1999. The parties have stipulated that Pabón's position classifies as a trust position. (*See* Docket Nos. 118, p. 19 ¶ 4 and 127, p. 15 ¶ 1). According to defendants, his appointment was in violation of P.R. Laws. Ann.-tit. 3 §§ 1337

---

**5.** "[R]epresentative government needs a certain amount of leeway for partisan selection of agents in order to work .... In order for a new administration to be given an opportunity to fulfill expectations, it must have available and also appear to have available significant facilitators of policy, people who have the personal and partisan loyalty, initiative, and enthusiasm that can make the difference between the acclaimed success of a government agency or program and its failure or, more typically, its lackluster performance. The presence of such persons advances the goals of representative government." *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241 (1st Cir.1986).

(1989), which prohibits the appointment of individuals to trust positions two (2) months before and two (2) months after general elections are held in Puerto Rico. In September 2000, Pabón was reinstated to the "Close Up" project in a career position with similar duties, but he no longer managed the project. In February 2001, Pabón argues that he was displaced from the "Close Up" program because he was asked to surrender the equipment assigned to him in connection with the "Close Up" program.

Defendants argue that the change in position was necessary because his former position was a trust position created in violation of the statute. Defendants also argue that a change from a trust position to a career position naturally altered his responsibilities and eliminated some of the perks that accompanied the managing position. The Court finds that the defendants' proffered *Mt. Healthy* defense is sufficient to meet their burden for providing a nondiscriminatory reason for their employment action. Pabón's original position was a position of trust, which defendants' could terminate without cause. Defendants then reassigned Pabón to a career position with similar duties, but without the same level of authority or job "perks." The burden thus shifts back to Pabón to discredit the proffered nondiscriminatory reason. Pabón, however, fails to provide any evidence to support his claim that the change in his employment status, being in violation of the Act, was politically motivated.

Pabón also claims that defendants stripped him of "equipment" because of his political affiliation. This Court finds Pabón's argument unpersuasive. An employee that loses "merely the perks of his position"—for example the best office or secretary in the agency, unlimited telephone access or unusually minimal over-sight—would not meet the "unreasonably inferior" standard. *Agosto–de–Felicaino*, 889 F.2d at 1218. Given the facts alleged by Pabón, read even in the most favorable light, this Court cannot find that his situation was one that amounted to an "unreasonably inferior" position. This Court thus GRANTS the defendants' motion for summary judgment with respect to plaintiff Pabón.

### 3. *Plaintiff Luis A. García González*

Plaintiff Luis A. García González ("García") has been employed by the Department since 1967. García spent twenty-two (22) years as an investigator for the Department. In 1999, García was appointed to an Executive II position. In January 2001, Rey sent a letter to García returning him to his former position as investigator. Later that month, García was suspended because of sexual harassment allegations made against him by a Ms. Milagros Lanza. According to García, his political affiliation and not the allegations of sexual harassment were the reason he was suspended by defendants. García alleges that the defendants were well aware of his political affiliation with the NPP.

Defendants assert that García's original position was a position of trust and thus his demotion to investigator did not violate the law. P.R. Laws. Ann. tit. 3 §§ 1336(4), 1346 (1989). Defendants also assert that García was suspended because a co-worker filed a claim against him alleging sexual harassment. The Court finds that the defendants' proffered *Mt. Healthy* defense is sufficient to meet their burden for providing a nondiscriminatory reason for defendants' suspension. P.R. Laws. Ann. tit. 3 §§ 1336(4), 1346 (1989).

 García only contests the suspension. (*See* Docket 128, p. 16 ¶ 1). Suspension is a recognized adverse employment action in political discrimination

cases. *San Miguel v. Lugo,* 560 F.2d 34, 36 (1st Cir.1977). García attempts to discredit the defendants' proffered nondiscriminatory reason by stating that the sexual harassment claim against him was dismissed after an investigation by a Department attorney in 1999. García claims that defendant Motta revived the investigation to provide a justification for García's suspension. García supports this argument by pointing to the Department attorney's recommendation that the Department dismiss the complaint against García for lack of probable cause. According to the record, the investigation against García was closed for at least a year and a half. García also alleges that Motta made threatening statements to him before his suspension, such as "... and you, I will take you down from that scooter, and be prepared that I am going to fire you." García claims to have campaigned for the NPP using a scooter. (*See* Docket 127, p. 25 ¶ 3). The Court finds that García has provided sufficient evidence to discredit the proffered nondiscriminatory reason. Because of the disputed fact regarding defendants' motivation for suspending García, this Court thus DENIES summary judgment.

## C. *Defendants' claim of qualified immunity*

■■■■ The doctrine of qualified immunity protects government officials who perform discretionary functions from liability for monetary damages under 42 U.S.C. § 1983. Generally, qualified immunity shields government officials "from suit and liability when their conduct does not violate clearly established statutory authority or constitutional rights, which a reasonable person should have known of at the time of the conduct at issue." *Mitchell v. Forsyth,* 472 U.S. 511, 524, 105 S.Ct. 2806 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d

396 (1982); *see Acevedo–García v. Vera–Monroig,* 204 F.3d 1, 10 (1st Cir.2000) (explaining right must be well-established and the official understood his actions would violate that right).

■■■■ When confronted with a claim of qualified immunity, the Court must first consider whether the allegations of the complaint make out a valid constitutional claim. *Wilson v. Layne,* 526 U.S. 603, 605, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). If the Court finds that the compliant raises such a claim, the Court must then determine as a matter of law, whether at the time of the alleged violation the constitutional right in question was clearly established. *St. Hilaire v. Laconia,* 71 F.3d 20 (1st Cir.1995). Making said determination "must be undertaken in light of the specific context of the case, not as a broad proposition." *Saucier v. Katz,* 533 U.S. 194, 199, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the Court finds that the alleged right was well-established at the time of the violation, the Court must then determine "whether a situated official reasonably should have understood that [his or her] conduct violated that right." *St. Hilaire,* 71 F.3d at 24. If the court finds that a similarly situated official would have acted the same way, qualified immunity is appropriate to protect the official from civil liability. If the Court makes the determination that a similarly situated official would not have acted the same way, qualified immunity does not shield the official from liability.

■■■■ Here, the plaintiffs have alleged facts that if true would amount to a claim violating their First and Fourteenth amendment rights. It is well-established that discrimination against an individual based upon their political affiliation is a violation of the core principles that the First Amendment protects. *Padilla–Gar-*

*cía*, 212 F.3d at 74. Defendants concede that discrimination based on political affiliation is an established violation of one's constitutional rights. (*See* Docket 118, p. 15 ¶ 2). In response, defendants simply claim that their decisions were not based on discriminatory motives. (*See* Docket 118, p. 16 ¶ 1). The factual circumstances surrounding the defendants' motivation for taking various adverse employment actions against plaintiffs form the central controversy in case. *See Roldán–Plumey v. Cerezo–Suárez*, 115 F.3d 58 at 65–66 (1st Cir.1997). Due to the factual disputes regarding possible discrimination based on political animus, this Court cannot grant defendants' motion for qualified immunity at this time. *See Padilla–García*, 212 F.3d at 74. Based on the reasons stated herein, the Court hereby **DENIES** the defendants' motion for summary judgment based on their assertion of qualified immunity.

### D. *Spousal Claims*

The defendants have moved to dismiss the spousal claims of Juan F. Martínez and Ricardo J. Castillo Montesino, based on Articles 1802 and 1803 of the Puerto Rico Civil Code, which are before the Court under supplemental jurisdiction. This Court cannot grant summary judgment on these claims at this juncture because said claims arise out of the same factual predicate as the claims of their respective husbands. The Court hereby **DENIES** the Defendant's motion for summary judgment with respect to the spousal claims.

### IV. *Conclusion*

For the reasons stated herein, the Court **ORDERS** that the defendants' motion for summary judgment be **DENIED** in part and **GRANTED** in part.

The Court **ORDERS** that summary judgment be **DENIED** with regards to the following plaintiffs: 1.) José A. Reyes Cañada; 2.) Jesús Martínez Vélez; 3.) Juan F. Martínez Nieves; 4.) Harry J. Rivera Lugo; 5.) Miguel A. Vega Barreiro; 6.) Ricardo J. Castillo Montesino; 7.) José A. Rivera Torres; 8.) Edith Pérez Posso; 9.) Iris Rivera Ruiz; 10.) Luis A. García; and 11.) the spousal claims of Juan F. Martínez and Ricardo J. Castillo Montesino.

The Court also **ORDERS** that summary judgment be **DENIED** with regards to defendants' claims of qualified immunity.

The Court **ORDERS** that summary judgment be **GRANTED** with regards to 1.) Israel I. Pabón Torres; and 2.) Roberto Ramírez.

**SO ORDERED.**