Gladys **HIRALDO CANCEL**, Plaintiff,

v.

**STATE INSURANCE FUND CORPORATION (SIFC), et al., Defendants.**

No. CIV.02–1130 RLA.

United States District Court, D. Puerto Rico.

July 23, 2004.

Fredeswin Pérez–Caballero, Hernandez Sanchez Law Firm, San Juan, PR, Raúl Barrera Morales, San Juan, PR, for Plaintiff.

Claribel Ortiz Rodríguez, Juan M. Rivera González, Lespier, Munoz Noya & Rivera, San Juan, PR, Felix M. Roman–Carrasquillo, Quiñones & Sanchez PSC, San Juan, PR, Ivonne Palerm–Cruz, Justice Department, Federal Litigation Division, San Juan, PR, for Defendants.

### ORDER DISMISSING DUE PROCESS CLAIM

ACOSTA, District Judge.

Plaintiff instituted this action challenging her removal from a supervisory position on political discrimination grounds. The complaint cites both due process and First Amendment challenges to the aforementioned personnel action. Defendants argue that the UNION DE EMPLEADOS DE LA CORPORACION DEL FONDO DEL SEGURO DEL ESTADO ("the UNION") is an indispensable party to these proceedings inasmuch as the removal at issue was taken pursuant to the terms agreed upon in the Collective Bargaining Agreement ("CBA") binding the STATE INSURANCE FUND CORPORATION (SIF). Defendants further argue that no adverse personnel action was taken vis à vis plaintiff, inasmuch as she was merely reassigned back to her permanent position after having occupied a temporary supervisory position in excess of the six-month limitation provided in the CBA.

### THE FACTS

1. On March 16, 1993 plaintiff commenced working at the SIF as a temporary employee with the classification of Registered Nurse I.

2. Her temporary contracts with the SIF were renewed uninterruptedly through June 30, 1995.

3. On February 9, 1994, as a result of a strike, the SIF and the UNION representing its employees subscribed a stipulation—subsequently amended by another stipulation—which granted

permanent status to temporary employees who had worked 18 months or more with the Agency as of December 31, 1994.

4. Based on the aforementioned agreement, on August 3, 1995 plaintiff was notified of her appointment to a permanent position as Registered Nurse I in the Medical Services Division, Nursing Section in the Carolina Region effective September 16, 1994.[1]

5. On March 12, 1999 plaintiff was appointed Registered Nurse IV.

6. On May 1, 2000 plaintiff was named Managerial Nurse I assigned to the nursing area of the SIF Carolina Regional Office in substitution of SANDRA MEDINA ROSARIO who was transferred to the SIF's Fajardo Dispensary.

7. As Managerial Nurse I plaintiff supervised all nurses, had a total of 17 employees under her charge, and also had administrative responsibilities. Further, plaintiff had a private office and telephone extension as well as a $100.00 salary increase.

8. At the time of her reassignment to Managerial Nurse I plaintiff, who had a Bachelors Degree in Nursing since 1978, had been a nurse for 24 years, and had been employed by the SIF uninterruptedly for at least 9 years.

9. Plaintiff's performance as Managerial Nurse I was excellent.

10. The Collective Bargaining Agreement between the SIF and the UNION at ¶ 15 provides a maximum term of six months for union employees to perform interim managerial duties.

11. On December 14, 2001 plaintiff was notified that due to the fact that her position as Managerial Nurse I had been a temporary one her appointment would no longer be extended and would cease effective December 31, 2001.

12. Plaintiff was substituted as Managerial Nurse I by EDWARD MELENDEZ MANGUAL who had completed a Bachelors Degree in Nursing during the three previous years.

13. At the time of her removal plaintiff had a post graduate certification as an occupational nurse which EDWARD MELENDEZ MANGUAL did not have.

14. The appointment of EDWARD MELENDEZ MANGUAL to Managerial Nurse I, also a temporary one, was extended beyond six months.

15. Plaintiff is affiliated to the NEW PROGRESSIVE PARTY ("NPP") and has actively participated in political activities. Her sister was the Electoral President of the NPP for the Carolina Region.

16. Plaintiff's political affiliation was well-known in the SIF as well as by defendants NICOLAS LOPEZ PENA and NOEMI CARABALLO LOPEZ both POPULAR DEMOCRATIC PARTY ("PPD") sympathizers.

17. The PPD party won the elections in November 2000.

## SUMMARY JUDGMENT STANDARD [2]

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary

---

1. Defendants contend this appointment was null because it was effected without any opening in violation of the CBA and hence, plaintiff has no viable property deprivation claim. This issue, however, is of no moment. As defendants themselves point out, on March 12, 1999 plaintiff was appointed to a permanent position. Further, plaintiff's § 1983 claim also challenges the removal from a supervisory position on First Amendment grounds.

2. Even though defendants labeled their petition as a motion to dismiss, the inclusion of documents outside the pleadings by both par-

judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–61 (1st Cir.2000); *Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 45 (1st Cir.1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. *De-Novellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994); *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir.1995).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Navarro v. Pfizer Corp.*, 261 F.3d 90, 94 (1st Cir.2001); *Grant's Dairy v. Comm'r of Maine Dep't of Agric.*, 232 F.3d 8, 14 (1st Cir.2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". *Lopez–Carrasquillo v. Rubianes*, 230 F.3d 409, 412 (1st Cir.2000); *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994); *Medina–*

*Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

## SECTION 1983

The complaint charges violation of 42 U.S.C. § 1983 which reads:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

■ In order to prevail in a § 1983 claim plaintiff must bring forth evidence that (1) defendant acted "under color of state law" and (2) deprivation of a federally protected right. *Macone v. Town of Wakefield*, 277 F.3d 1, 9 (1st Cir.2002); *Rogan v. City of Boston*, 267 F.3d 24 (1st Cir.2001); *DiMarco–Zappa v. Cabanillas*, 238 F.3d 25, 33 (1st Cir.2001); *Collins v. Nuzzo*, 244 F.3d 246 (1st Cir.2001); *Barreto–Rivera*, 168 F.3d at 45.

There is no controversy that under the facts as charged the named defendants were acting within the scope of their duties as officers of a state government agency at all relevant times. Therefore, the first element is satisfied. We must then ascertain whether plaintiff was deprived of any federally protected right as a result of the events charged in the complaint.

■ Section 1983 does not create substantive rights but is rather a procedural mechanism for enforcing constitutional or

---

ties converted the request into a summary judgment vehicle pursuant to the provisions of Rule 12(b) Fed.R.Civ.P. *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4–5 (1st Cir.1998);

*Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir.1997); *Vega–Rodriguez v. Puerto Rico Telephone Co.*, 110 F.3d 174, 177–78 (1st Cir.1997).

statutory rights. *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The statute, i.e., § 1983 " 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred... by the United States Constitution and federal statutes.' " *Rodriguez–Garcia v. Municipality of Caguas,* 354 F.3d 91, 99 (1st Cir.2004) (citing *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). Hence, it is plaintiff's burden to identify the particular underlying constitutional or statutory right that is sought to be enforced via judicial proceedings.

## DUE PROCESS

In her complaint plaintiff alleges a deprivation of property rights without due process. The Due Process Clause provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1.

Property interests, however, are not created by the Constitution but derive instead from state law provisions. "[T]he Constitution does not create property interests; instead, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' ", *Santana v. Calderon,* 342 F.3d 18, 23 (1st Cir.2003) (citing *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

■ A party's unilateral belief does not by itself translate into a property right subject to due process concerns. "In order to establish a constitutionally-protected property interest, a plaintiff must dem-

onstrate that she has a legally recognized expectation that she will retain her position." *Santana v. Calderon,* 342 F.3d at 24. " 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim or entitlement to it.' " *Macone v. Town of Wakefield,* 277 F.3d at 9 (citing *Bd. of Regents of State Colleges v. Roth,* 408 U.S. at 577, 92 S.Ct. 2701, 33 L.Ed.2d 548).

■ Contrary to plaintiff's permanent position as Registered Nurse which entitles her to due process safeguards,[3] plaintiff's appointment to a managerial position was of a temporary nature, which she herself acknowledges. Plaintiff has not opposed defendants' arguments that she had no property right to remain indefinitely in the position of Managerial Nurse I nor do we find any justification therefore. Hence, there is no valid due process claim under the facts as presented in this case and the same is hereby **DISMISSED**.

## FIRST AMENDMENT

■ Dismissal of the due process claim, however, does not dispose of the political discrimination allegations subject to First Amendment protection. *See i.e., Gomez v. Rivera Rodriguez,* 344 F.3d 103, 111 n. 5 (1st Cir.2003) (discussing difference between the two causes of action). It is settled that public employees who do not have a property interest in their jobs such as transitory or null appointments may not be removed from their positions due to unlawful patronage practices. "Public em-

---

**3.** "Puerto Rican law grants a property interest in employment to career employees." *Figueroa–Serrano v. Ramos–Alverio,* 221 F.3d 1, 6 (1st Cir.2000). "Under the Due Process Clause of the Fourteenth Amendment, per-

sons who possess a property interest in continued public employment cannot be deprived of that interest without due process of law", *Id.*

ployees can never be fired in violation of their First Amendment rights." *Id. See, i.e., Rosario–Urdaz v. Rivera–Hernandez,* 350 F.3d 219, 224 (1st Cir.2003) ("even if the defendants can establish that the plaintiff's employment was null and void because she was hired illegally, the plaintiff must still be accorded the opportunity to argue that her dismissal on this ground was a pretext for political discrimination."); *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d 92, 98 (1st Cir.1997) ("fact that a transitory employee does not have a reasonable expectation of renewal in his or her employment that would require due process protections does not defeat a First Amendment claim."); *Acevedo–Diaz v. Aponte,* 1 F.3d at 69 n. 5 (nullity of appointment does not preclude First Amendment challenge).

■ Political discrimination in employment is conduct proscribed by the First Amendment. "It is now well established that political patronage restrains freedom of belief and association, core activities protected by the First Amendment." *Padilla–Garcia v. Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000).

■ Our initial inquiry in this case is to determine whether plaintiff's particular job as Managerial Nurse I was shielded from political bias or whether, on the other hand, she held a "policymaking position" or a "position of unusual confidence" which do allow for political affiliation as an appropriate consideration when making personnel-related decisions. *Gomez v. Rivera Rodriguez,* 344 F.3d at 110; *Padilla–Garcia,* 212 F.3d at 74. "Public employees who do not hold confidential policy-making positions are protected from adverse employment actions based on political affiliation." *Figueroa–Serrano,* 221 F.3d at 7. *See, Duriex–Gauthier v. Lopez–Nieves,* 274 F.3d 4, 11 (1st Cir.2001) ("position is one in which political affiliation is a reasonably necessary requirement").

■ No claim has been made in this case that in her capacity as Managerial Nurse I plaintiff held a policymaking position nor one that would demand confidentiality. Accordingly, we conclude that plaintiff's political views could not be considered in the determination to remove her from this position.

The protection against political patronage practices resulting in dismissals initially validated in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), was subsequently extended to also cover promotions, transfers, recalls or hiring decisions in *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). *Rutan* specifically ruled that "promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." 497 U.S. at 75, 110 S.Ct. 2729.

■ In order to determine whether or not plaintiff was the victim of objectionable political patronage we must follow the *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) route,[4] which places the

---

4. The probative onus placed on the parties in political discrimination cases differs from that required in employment discrimination suits brought under Title VII. "In contrast [to Title VII suits] under the *Mt. Healthy* analysis for political discrimination, the burden of persuasion passes to the defendant-employer once the plaintiff produces sufficient evidence of her prima facie case. In other words, the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons."

initial burden upon plaintiff who must present sufficient evidence to establish that "political affiliation was a substantial or motivating factor in the decisional calculus." *Gomez v. Rivera Rodriguez,* 344 F.3d at 110; *Padilla–Garcia,* 212 F.3d at 74; *Cosmé–Rosado v. Serrano–Rodriguez,* 360 F.3d 42, 47 (1st Cir.2004). *See also, Figueroa–Serrano,* 221 F.3d at 7 (constitutionally protected conduct substantial factor in the decision).

 Merely juxtaposing plaintiff's political affiliation with a claim that she was treated unfairly will not suffice to meet the causation requirement. *Id.; Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 58 (1st Cir.1990). Similarly, the mere fact that the defendants charged with the discriminatory conduct belong to a different political party is insufficient for plaintiff to meet his burden and avoid summary disposition of a patronage claim. *Figueroa–Serrano,* 221 F.3d at 7–8; *Kauffman v. P.R. Tel. Co.,* 841 F.2d 1169, 1172 (1st Cir.1988).

 An "assertion about statements of political affiliation—unaccompanied by any specific factual information to support [a political discrimination] claim, and unrelated to any employment action taken by [defendant] against [plaintiff]—is patently insufficient to establish an act of political discrimination." *Lopez–Carrasquillo,* 230 F.3d at 414. However, plaintiff is not required to prove her discrimination claim by direct evidence. "In a political discrimination case, the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." *Padilla–Garcia,* 212 F.3d at 77. Circumstantial evidence of politically-based discriminatory animus may suffice if, when considered in *toto,* it would allow a rational jury to make a reasonable inference of improper motive. *Acosta–Orozco v. Rodriguez–de–Rivera,* 132 F.3d 97, 101–02 (1st Cir.1997); *Anthony v. Sundlun,* 952 F.2d 603, 605–06 (1st Cir.1991).

 On a motion for summary judgment scenario plaintiff must produce sufficient evidence for a reasonable fact finder to infer that her political affiliation was a substantial or motivating factor behind the employment practice in controversy. Thus, the defendant "bears the burden of persuading the factfinder that his/her reason for the adverse employment action is credible." *Reyes Canada v. Rey Hernandez,* 286 F.Supp.2d 174, 178 (D.P.R.2003).

██ Plaintiff has clearly met her prima facie burden to state a First Amendment violation. She presented uncontroverted evidence of her affiliation and active participation in the NPP as well as the fact that her political views were known to the defendants, both members of the rival political party. Additionally, there is undisputed proof that plaintiff—who was adequately performing her duties as supervisor—was substituted by a PPD sympathizer with

---

*Padilla–Garcia,* 212 F.3d at 78 n. 8 (citations and internal quotation marks omitted).

In Title VII suits plaintiff retains the burden of persuasion throughout the litigation with defendant's duty limited to a proffer of non-discriminatory reasons. Thus, in Title VII discrimination cases, once plaintiff meets the threshold of prima facie discrimination "only a limited burden of production passes to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The employer under Title VII need not submit sufficient evidence to persuade the factfinder because the plaintiff retains the burden of persuasion at all times." *Padilla–Garcia,* 212 F.3d at 78 n. 8 (citations and internal quotation marks omitted).

remarkably less experience and credentials.

"If she can establish that political discrimination was a motivating factor in her ouster, the defendants must then attempt to prove that they would have made the same decision even in the absence of any discriminatory animus." *Rosario–Urdaz v. Rivera–Hernandez*, 350 F.3d at 224. "If the plaintiff satisfies this burden the devoir of persuasion shifts to the defendants to prove that they would have taken the same action regardless of plaintiff's political affiliation." *Gomez v. Rivera Rodriguez*, 344 F.3d at 110; *Cosme–Rosado*, 360 F.3d at 47; *Acevedo–Diaz v. Aponte*, 1 F.3d 62, 67 (1st Cir.1993) (defendant's duty to present sufficient evidence to establish that "plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons.") This is "commonly referred to as the *Mt. Healthy* defense." *Padilla–Garcia*, 212 F.3d at 74.

■ Hence, defendants carry the burden of persuasion on their *Mt. Healthy* defense and must present sufficient evidence for a reasonable factfinder to conclude that their decision was motivated by non-political concerns. That is, that they would have taken the same decision "regardless of plaintiff's political affiliation." *Acosta–Orozco*, 132 F.3d at 103.

### Reasons Proffered

Defendants reject plaintiff's assertion that her termination as Managerial Nurse I responded to improper political motives and defend by arguing that: (1) plaintiff had no property right in her transitory appointment; (2) she was not the victim of an adverse employment action because her salary in her permanent position remained unchanged, and (3) they merely complied with the CBA provisions. The court finds these arguments without merit.

■ As previously discussed, the fact that plaintiff had no property interest in the temporary supervisory position does not render her an unprotected target of patronage dismissal. *Gomez v. Rivera Rodriguez*, 344 F.3d at 109.

■ Likewise, we reject defendants' argument that plaintiff suffered no adverse employment action. As a result of her termination as Supervisory Nurse I plaintiff lost extra monetary compensation. She was also deprived of her supervisory and administrative responsibilities, as well as the privileges attendant thereto such as a private office and telephone line.

Lastly, we find defendants' purported reasons for the removal pretextual.

### Pretext

Defendants' justification of the CBA time limitation for plaintiff's reassignment was clearly called into doubt by plaintiff. According to the uncontroverted evidence not only was her successor's appointment extended beyond the six-month term provided in the CBA but it was also the prevailing practice at the SIF to name PDP sympathizers union members to interim managerial position and renew their appointments beyond this duration.[5]

Contrary to defendants' position, their right to circumscribe temporary supervisory assignments in accordance with CBA limitations is not being called into question. However, defendants may not use this apparently neutral restriction[6] as a

---

5. Plaintiff identified the following employees as examples of this practice: (1) SHEILA BENITEZ, (2) WANDA LIZ RODRIGUEZ, (3) AGNES HERNANDEZ VILLAHERMOSA, (4) FELIPE RORIGUEZ REYES, (5) KEVIN ESCOBAR, and (6) JOSE ACEVEDO.

6. In this respect this situation is similar to those cases where restructuring or reorgani-

pretext to discriminate for unconstitutional reasons. The record clearly shows that the time limitation was unevenly applied at the SIF and that it was used as a subterfuge to favor political allies.

■ Based on the evidence filed by plaintiff we find that a fact finder could reasonably infer that party affiliation was a substantial or motivating factor in defendant's decision to remove her from the position of Managerial Nurse I and that application of the six-month limitation was used as a pretext to substitute plaintiff with a PPD employee. Faced with the strong proof of political animus coupled with the evidence of disparate treatment submitted by plaintiff there is a genuine dispute of fact as to the veracity of the reasons proffered by the defendants for the switch in plaintiff's employment.

Hence, dismissal is not appropriate on the First Amendment claim and defendant's request is **DENIED**.

## CONCLUSION

Based on the foregoing, defendants' Motion to Dismiss (docket No. 21)[7] is disposed of as follows:[8]

Plaintiff's due process claim is hereby **DISMISSED**.[9]

The request to dismiss plaintiff's First Amendment claim is **DENIED**.

IT IS SO ORDERED.

## *PARTIAL JUDGMENT DISMISSING DUE PROCESS CLAIM*

The court having dismissed plaintiff's due process claim through its Order issued on this date, it is hereby

ORDERED AND ADJUDGED that plaintiff's due process claim be and the same is hereby **DISMISSED**.

IT IS SO ORDERED.

zation plans have been selectively applied or where the nullity and/or transitory nature of the employment has been used as an excuse to rid the agency of political opponents. *See, i.e., Padilla–Garcia*, 212 F.3d at 78 where the court found that defendant's bare allegation that the elimination of plaintiff's position was the result of a municipal restructuring plan insufficient absent evidence that other employees were likewise affected. Similarly, in *Rodriguez–Rios v. Cordero*, 138 F.3d at 26–7, the Court of Appeals rejected defendants' reorganization defense because its approval deviated from previous ones and its proffered justification as a reduction of costs mechanism was undermined by twenty new recruits.

Additionally, it has been held that the government "may not allow transitory employees' contracts to expire if the primary motive is to punish them for their political affiliation. This is true regardless of whether the employees have been renewed on a regular basis

prior to their dismissal or... have served only one term." *Nieves–Villanueva*, 133 F.3d at 98 (citation omitted). *See also, Acevedo–Diaz v. Aponte*, 1 F.3d at 69 n. 5 where the court the court ruled that nullity of an appointment does not preclude a First Amendment challenge.

7. *See also*, plaintiff's Memorandum of Law (docket No. 20) and Opposition to Motion to Dismiss (docket No. 27).

8. We find no merit in defendants' argument that the UNION's presence in this case is essential. Based on the evidence presented the SIF's Regional Directors were responsible for these interim appointments and the practice at issue was apparently widely used by them without regard to the CBA provision.

9. Partial Judgment shall be entered accordingly.