**Nadya HUERTAS MORALES, Plaintiff**

v.

**Juan AGOSTO ALICEA, et al., Defendants**

**No. CIV. 02–1793(JP).**

United States District Court, D. Puerto Rico.

Aug. 1, 2003.

Andrés Guillemard–Noble, Nachman, Guillemard & Rebollo, San Juan, PR, For Plaintiff.

Zuleika Llovet–Zurinaga, Mariana Negrón–Vargas, Commonwealth Department of Justice, Federal Litigation Division, Pedro Santiago–Rivera, Reichard & Escalera, San Juan, PR, for Defendant.

### AMENDED OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it Defendants Juan Agosto Alicea, in his personal capacity as former president of the Government Development Bank of Puerto Rico, the Government Development Bank of Puerto Rico ("GDB"), and the Puerto Rico Housing Finance Authority's ("PRHFA") Motion for Summary Judgment (docket No. 30) and Plaintiff Nadya Huertas Morales's opposition thereto (docket No. 40).

Plaintiff brings this claim under 42 U.S.C. § 1983, pursuant to the First, Fifth and Fourteenth Amendments to the United States Constitution, alleging that Defendants discriminated against her based

on her political affiliation when they relocated her from the GDB to an allegedly inferior career position at the PRHFA. Plaintiff, a member of the New Progressive Party ("NPP"), has been a career employee of the Government Development Bank, working as the Vice President of Human Resources and Labor Relations, since 1995. This position had previously been considered a trust position but was changed to a career position in 1995 during the administration of former NPP Governor Pedro Rosselló. In 2000, the Popular Democratic Party ("PDP") won the gubernatorial election in Puerto Rico and the administration of both the GDB and PRHFA became associated with the PDP. In 2001, Co–Defendant GDB changed Plaintiff's position from a career position to a trust position. Plaintiff was removed from her position and relocated to a career position with PRHFA.

Defendants now move for summary judgment, alleging that 1) Plaintiff has failed to establish a prima facie case of political discrimination; 2) Plaintiff's First Amendment claim should be dismissed because she was properly relocated to a career position; 3) Plaintiff's First Amendment claim should be dismissed because her position was a trust position; 4) Plaintiff was afforded a hearing, therefore there was no violation of her substantive procedural due process rights; 5) Co–Defendant Juan Agosto Alicea is immune from suit based on the qualified immunity doctrine; 6) Plaintiff's supplemental claims under the law of the Commonwealth of Puerto Rico should be dismissed because she has no actionable claims under federal law.

## II. STATEMENTS OF FACTS

These uncontested facts are taken from the uncontested facts agreed to by the parties during the Initial Scheduling Conference.

1. On June 29, 1995, Plaintiff was notified that she was designated as Director of Human Resources and Labor Relations of the Government Development Bank ("GDB"), effective July 3, 1995.

2. On January 3, 1996, Plaintiff passed her probationary period for the position of Human Resources Director.

3. On May 30, 2001, Juan Agosto Alicea, as President of the GDB, sent a letter to Plaintiff, informing her that her position of Human Resources Director, which had been a career position, would revert to a trust position, and that she would be relocated to a career position with Puerto Rico Housing Finance Authority ("PRHFA").

4. Plaintiff's salary was not changed.

5. An administrative hearing was conducted regarding Plaintiff's relocation, during which Plaintiff was given the opportunity to be heard and to bring forth evidence to sustain her position.

6. On March 13, 2002, the examiner issued a resolution in Plaintiff's case.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248; *Mack v. Great Atl. & Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *See First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See id.; see also Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

## IV. CONCLUSIONS OF LAW

### A. Trust Employees do not Have a Cause of Action for Political Discrimination or Property Interest in Employment

Defendants allege that political affiliation is a proper requirement for Plaintiff's position with the Human Resources Department because her position, "Vice President of Human Resources and Labor Relations", is considered a policymaking trust position. According to Defendants, the position entails access to confidential information and involves formulating public policy. The current job description of the position includes, among other things: "developing or recommending rules and norms to establish the policy of the administration of human resources" and "directing and participating in the implementation of public policy."

To support their position, Defendants offer as evidence a report by Consultant Alba Nydia Caballero Fuentes, an attorney, of March 31, 2001, where Ms. Caballero Fuentes determined that the position was a trust position and that the 1995 reclassification from trust to career by the past administration was illegal. In her report, Attorney Caballero disagreed with the previous report of the Secura Group commissioned by the NPP administration in 1993, noting that 1) dissatisfaction with the Human Resources program at the agency did not justify changing the status of the position, because there is dissatisfaction in most agencies; 2) having a Human Resources Director for a long period of time does not guarantee good performance; 3) the turnovers in the Agency can be attributed to the turnovers in the position of GDB President; 4) the public policy in Puerto Rico is to designate employees as trust employees where they intervene or collaborate substantially in the formation of public policy, and the position of Human Resources Director is without a doubt one which intervenes and collaborates substantially in the formation of the policy as to Human Resources at the agency; 5) according to Human Resources scholars, Human Resources Management

recognizes that Human Resources planning must be integrated closely with strategic organizational planning.

Plaintiffs respond that in January 1993, the GDB commissioned the Secura Group of Boston, Massachusetts, to perform an independent analysis of the bank's structural organization and an audit. The report, titled "Organization Study and Strategy Audit", recommended that the position "Vice President of Human Resources and Labor Relations" be converted from a trust position to a career position in order to reduce turnover in the position. According to the report, high turnover was reducing the effectiveness of the Human Resources Department. The report noted that the position was critical to the continuity and stability of an agency and therefore should be reserved for career professionals, as it is in the U.S. Federal Government. The GDB relied upon this report in deciding to change the classification of the position from trust to career.

In addition, Plaintiff states that the position that Plaintiff occupied was a career position by nature but that Defendants changed the job description of the position when they converted it to a trust position. According to Plaintiff, Defendants moved the Department of Human Resources from a third-tier level to a second-tier level, with the Director reporting directly to the President of the GDB. Defendants changed and expanded the functions of the position and expressly included the duty of "directing and participating in the implementation of public policy." According to Plaintiff, this language was previously absent from the career position profile. Thus, Plaintiff states that Plaintiff's position could be considered a career position or a trust position, depending on the job description of the position.

In general, a public employee may not be fired solely because of his political affiliation. *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Rosenberg v. City of Everett,* 328 F.3d 12, 2003 WL 1989231 at *4 (1st Cir. May 1, 2003). Dismissal based on political patronage is permissible, however, if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 240 (1st Cir. 1986) (en banc) (*quoting Branti,* 445 U.S. at 518, 100 S.Ct. 1287). Political discharge is permitted to give a new administration an opportunity to fulfill expectations by surrounding itself with "agency leaders and top subordinates responsive to the elected officials' goals." *Flynn v. City of Boston,* 140 F.3d 42, 46 (1st Cir.1998). Whether or not a position is subject to political discharge is a legal question for the courts. *Id.* at 44.

The Defendants' allegation that the position of Human Resources Director is a trust Position is supported by law. According to the law, party affiliation is an appropriate requirement for a public position if (1) "the discharging agency's functions entail 'decisionmaking on issues where there is room for political disagreement on goals or their implementation,'" and (2) "'the particular responsibilities of the plaintiff's position resemble those of a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement for continued tenure."' *Rosenberg v. City of Everett,* 328 F.3d 12, 18 (1st Cir.2003) (*quoting Jiménez Fuentes,* 807 F.2d at 241–42). The job description of "Director of Human Resources and Labor

Relations" clearly implicates policymaking and access to confidential information. While Plaintiff argues that the job description was changed and only became a trust position due to these changes, the documentary evidence shows that the position has remained a policymaking position for years. The description of the position from 1989 states that the position entails, among other things, "participating, with the President and other executives, in the strategic planning of the human resources necessary to operate the Bank ... [the Director shall] develop and recommend the rules and norms that will permit the establishment of the administration's policy as to personnel and labor relations." The job description from 1993 is substantially similar, stating that the job entails, among other things, "planning, organizing, and directing the tasks that are performed in the Department" and that the director "has the responsibility of preparing and recommending the required regulations for compliance with labor law." Finally, the 1995 description is also substantially similar, stating, among other things, that the Director shall "develop and recommend norms, systems, and procedures that will allow the application of the policy of the administration as to personnel and labor relations."

The Court finds that all the job descriptions are substantially similar and all entail the development of policy in accordance with the administration's philosophy. Accordingly, the Court finds that Plaintiff's position was indeed a trust position. *See, e.g., Duriex–Gauthier v. López–Nieves,* 274 F.3d 4, 10 (1st Cir.2001) (political dismissal upheld where employee was "responsible for the planning and supervision of all the personnel activities," analyzing organizational problems and acting as a liaison with a higher office); *Jiménez Fuentes v. Torres Gatzambide,* 807 F.2d 236, 243–46 (1st Cir.1986) (finding position

to be one of policymaking where employee "proposes, establishes, and implements public policy, is privy to confidential information, and acts as a spokesperson for the agency"); *see also Flynn v. City of Boston,* 140 F.3d 42, 45 (1st Cir.1998) (noting that dismissal on political ground has been upheld in this circuit "where the plaintiff merely represented the agency's policy positions to other entities or to the public").

■ Furthermore, the Court finds that the position of Human Resources Director, previously commonly known as "Jefe de Personal", is by nature, and in all fields, a trust position and cannot be classified otherwise. It is a position that is properly described as a trust position because of its nature as a policymaking position of great responsibility and intense connection to the administration's goals. The Human Resources Director is one of the most influential executives in the administration of any business. As a final note, the Court finds it interesting that the status of the position was changed shortly before the 1996 elections. The Court **FINDS** that Plaintiff's position as Vice President of Human Resources and Labor Relations is properly considered to be, and can only be classified as, a trust position.

[6, 7] Because Plaintiff's position was without a doubt a trust position, Defendants had a right to reclassify the position from a career position to a trust position, to transfer Plaintiff from that position, and to replace her with a person from their administration. By doing so, Defendants did what was right. However, Defendants also were required to reinstate Plaintiff to a career position after the change in administration. In Puerto Rico, every regular employee in a career position who is appointed to a trust position shall be entitled to be reinstated in a position equal or

similar to the last one he held in the career service after a change in administration.

■■ In 1982, the Director of the Central Office of Personnel Administration implemented the mandate of Section 1350 as follows:

Whenever a trust employee is separated from his position and prior to rendering services in the trust service he held a career position with a regular status, he will have the absolute right to be reinstated to a position equal or similar to the last one he occupied in the career service. The responsibility for reinstating the employee will belong to the agency from which he was separated, which must exhaust all remedies to reinstate the employee in any of its programs or in other agencies of the personnel system. 3 P.R. Laws Ann. § 1350.

According to Puerto Rico law, Defendants had to reinstate Plaintiff to a position equal or similar to the last one she occupied in the career service. In this case, Plaintiff testified that, while she was indeed reinstated to a career position, she was assigned to a position unreasonably inferior to her prior position, where she was not assigned duties that corresponded to her position, and that Defendants' decision to do so was motivated by discriminatory animus. The Court finds that the factual circumstances and motivation surrounding Defendants' decision to assign Plaintiff to these particular duties and working conditions are in dispute; there remains a question of fact as to whether these working conditions and duties were equal or similar to those of her previous career position, and, if they were not, whether Defendants' decision to assign her to the unreasonably inferior duties and conditions was motivated by discriminatory animus. *See Roldán–Plumey,* 115 F.3d at 65; *see also Gómez–Candelaria v. Riv-era–Rodríguez,* 218 F.Supp.2d 66, 75 (D.Puerto Rico 2002) (Pieras, J.). The key component of a political discrimination defense for any type of employee, whether he be career, regular, irregular or transitory, is a *lack of discriminatory animus by the Defendants,* which is a question of fact proper only for a jury to decide.

**B. Due Process**

■■ Defendants allege that they did not violate Plaintiff's rights to Due Process under the Fifth and Fourteenth Amendments because she was afforded an appeal and hearing of the decision to relocate her. As Plaintiff is a career employee, she holds a property interest in her employment sufficient to invoke due process clause protection. *See Board of Regents of State Colleges v. Rother,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Due Process Clause of the Fourteenth Amendment guarantees public employees with a property interest in continued employment the right to a pre-termination hearing. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). In this case, Defendants provided Plaintiff with a hearing and the opportunity to bring forward evidence to support her position. On June 14, 2001, Plaintiff requested a hearing via a letter to the Board of Directions of the GDB. The hearing took place on October 8, 2001, at the EDB, before Examiner Flavio Cumpiano, Esq. Plaintiff and Defendants were represented by counsel. Co–Defendant Agosto Alicea testified. During the direct examination, Plaintiff's counsel was permitted to object and later cross-examined Co–Defendant Agosto Alicea. Alba Caballero Fuentes, the consultant who authored the report on Plaintiff's position, also testified. The parties submitted documentary evidence to the examiner. The hearing was thorough and was conducted

in compliance with Plaintiff's due process rights. On March 14, 2003, the Examiner released his findings, determining that the GDB acted legally in changing Plaintiff's position to a trust position and relocating Plaintiff. The Court also notes that Plaintiff, in her opposition to Defendants' motion for summary judgment, did not set forth arguments in opposition to Defendants' motion for summary judgment on her due process claims. Because Defendants did not violate Plaintiff's rights to due process under the Fifth or Fourteenth Amendments, the Court hereby **DISMISSES WITH PREJUDICE** those claims.

### C. Qualified Immunity

According to Defendants, the conduct of Juan Agosto Alicea is protected by the doctrine of qualified immunity because it was imminently reasonable and did not violate clearly established law. Defendants state that Agosto Alicea's decision to relocate Plaintiff was valid because it was based on the findings of an independent report and because Agosto Alicea was unaware of Plaintiff's political affiliation. Plaintiff alleges that Agosto Alicea's reclassification of her position and relocation of her to an allegedly inferior position were politically motivated.

The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under 42 U.S.C. § 1983. *See Roldán–Plumey v. Cerezo–Suárez*, 115 F.3d 58, 65 (1st Cir. 1997). The general rule regarding qualified immunity is that government officials are immune from suit and liability when their conduct does not violate clearly established statutory authority or constitutional rights, which a reasonable person should have known of at the time of the conduct at issue. *Mitchell v. Forsyth*, 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Acevedo–García v. Vera–Monroig*, 204 F.3d 1, 10 (1st Cir.2000) (the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

When assessing a claim of qualified immunity, the Court should first consider whether the allegations of the complaint make out a constitutional rights claim. *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1694, 143 L.Ed.2d 818 (1999). If the answer to this inquiry is in the affirmative, the Court must then determine, as a matter of law, whether the constitutional right in question was clearly established at the time of the alleged violation. *St. Hilaire v. Laconia*, 71 F.3d 20 (1st Cir.1995), *cert. denied* 518 U.S. 1017, 116 S.Ct. 2548, 135 L.Ed.2d 1068 (1996). The Supreme Court has recently noted however that "[t]his inquiry, ... must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). If this inquiry yields an answer that is also in the affirmative, the final inquiry is whether a similarly situated official reasonably "should have understood that [his or her] conduct violated" that right. *St. Hilaire*, 71 F.3d 20 at 24. If the answer is in the affirmative, qualified immunity is appropriate. However, a negative answer to any of the aforementioned three steps requires that the Court deny the defense.

It has been clearly established that when there is a material dispute of fact, summary judgment cannot be ordered. *Swain v. Spinney*, 117 F.3d 1, 10 (1st Cir.1997). "Only after the facts have been settled can the court determine whether the actions were objectively reasonable so as to fall under the qualified

immunity umbrella". *Id.* The Court finds that in the case at bar, Plaintiff has alleged facts that, if true, make out a constitutional rights claim of political discrimination. Specifically, there is a question of fact as to whether the position to which Plaintiff was reassigned was equal or similar to her previous career position and whether she was assigned inferior working conditions and duties based on her political affiliation. If the employment actions taken were motivated by political animus, the Defendants knew or should have known that such action was clearly unconstitutional. While the general prohibition against political discrimination was clearly established when Defendants acted[1], the factual circumstances and motivations surrounding the Defendants' placement of Plaintiff in that particular position are in dispute. *See Roldán–Plumey,* 115 F.3d at 65–66; *see also Gómez–Candelaria v. Rivera–Rodríguez,* 218 F.Supp.2d 66, 76 (D.Puerto Rico 2002). Therefore, due to the factual disputes regarding a possible political discriminatory motivation and the circumstances surrounding Defendants' decision to give Plaintiff the particular duties and working conditions she had at the PRHFA, all of which are vital to this case as a whole and the Court's assessment of the qualified immunity defense in particular, the Court is not in a position to grant Defendants' motion for qualified immunity at this time. *Kelley v. LaForce,* 288 F.3d 1, 7 (1st Cir.2002); *Acevedo–García,* 30 F.Supp.2d at 148; *Gómez–Candelaria,* 218 F.Supp.2d at 76.

██ However, the Court **GRANTS** qualified immunity to Defendant Agosto Alicea as to his decision to reclassify Plaintiff's position from a career position to a trust position and to transfer Plaintiff from that position and place a person of his same political affiliation in that position. The legality of those actions is not in dispute and the Court finds that Defendant Agosto Alicea did what was right under the circumstances.

Accordingly, Defendants' motion for qualified immunity is hereby **DENIED** at this stage of the litigation as to Defendant Agosto Alicea's decision to assign the particular duties and working conditions Plaintiff held at the PRHFA and **GRANTED** as to his decision to reclassify her position from trust to career and place a person sympathetic to his political views in that position.

## V. CONCLUSION

The Court The Court **GRANTS IN PART** Co–Defendants Juan Agosto Alicea, the Government Development Bank, and the Puerto Rico Housing Finance Authority's motion for Summary Judgment (docket No. 30) and **DISMISSES WITH PREJUDICE** the Plaintiff's Fourteenth Amendment and Fifth Amendment Due Process claims. The Court **FINDS** that the position of "Director of Human Resources and Labor Relations" that Plaintiff occupied is a trust position. The Court **DENIES** Co–Defendants' motion for summary judgment on qualified immunity grounds as to the question of whether Plaintiff was assigned to unreasonably inferior working conditions based on her political affiliation at the PRHFA and whether the position to which Plaintiff was reassigned was equal or similar to her previous career position. However, the Court **GRANTS** Co–Defendant Agosto Alicea's motion for summary judgment on qualified immunity grounds as to his decision to reclassify Plaintiff's position as a trust position, transfer Plaintiff from that

---

1. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

position, and to choose a replacement who was sympathetic to his political views. The Court **DENIES** Defendant's motion for summary judgment on all other grounds advanced by Defendant

**IT IS SO ORDERED.**