Maribel CONCEPCION, Plaintiff,

v.

Frank ZORRILLA, et al., Defendants.

No. CIV. 01–2000(RLA).

United States District Court,
D. Puerto Rico.

March 8, 2004.

Jesús Hernández Sánchez, San Juan, PR, Raúl Barrera–Morales, San Juan, PR, for Plaintiff.

María Luisa Martínez–López, Avila Martinez & Hernandez, San Juan, PR, Teresa M. Seda–Ramos, Sanchez Betances & Sifre, P.S.C., San Juan, PR, Ineabelle Santiago–Camacho, Reichard & Escalera, San Juan, PR, for Defendant.

## ORDER IN THE MATTER OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ACOSTA, District Judge.

Defendants have moved for summary judgment requesting dismissal of the claims asserted in these proceedings. The court having reviewed the arguments submitted by the parties hereby finds as follows.

This action was instituted by MARIBEL CONCEPCION against the AUTOMOBILE ACCIDENT COMPENSATION AUTHORITY ("ACAA") as well as FRANK ZORRILLA, its Executive Director, and MABEL ALVARADO, Director of Human Resources, in their official and individual capacities. Plaintiff alleges political discrimination and seeks both equitable relief and damages pursuant to the First, Fifth and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. § S 1983 and 1985. Additionally, plaintiff brought a tort claim pursuant to art. 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141 (1990) under our supplemental jurisdiction.

## I. SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sands v. Ridefilm Corp.,* 212 F.3d 657, 660–61 (1st Cir.2000); *Barreto–Rivera v. Medina–Vargas,* 168 F.3d 42, 45 (1st Cir.1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. *De-Novellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. *Morris v. Gov't Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir.1994); *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Navarro v. Pfizer Corp.,* 261 F.3d 90, 94 (1st Cir.2001); *Grant's Dairy v. Comm'r of Maine Dep't of Agric.,* 232 F.3d 8, 14 (1st Cir.2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". *Lopez–Carrasquillo v. Rubianes,* 230 F.3d 409, 412 (1st Cir.2000); *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994); *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

## II. THE FACTS

1. Plaintiff worked in the Human Resources Office of ACAA from **August 1, 1999 until May 1, 2001.**

2. On **August 12, 1999** plaintiff's position as Assistant to the Auxiliary Director of Human Resources was reclassified to Human Resources Manager, due to a substantial change in duties and responsibilities.

3. On **April 3, 2000** plaintiff was recommended for a merit step increase based on her outstanding performance in the Human Resources Office. At the time she was also Acting Director of the Human Resources Office.

4. Effective **May 1, 2001** plaintiff was transferred to a new position entitled Operational Administration Manager in ACAA's Operations Department pursuant to a letter subscribed by FRANK ZORRILLA dated **April 27, 2001**.

5. Prior to her transfer, plaintiff's last position was Human Resources Manager.

6. Two new manager positions were created in the Operations Department, including plaintiff's.

7. Plaintiff was offered a hearing to challenge her transfer but did not act upon it.

8. Plaintiff is a New Progressive Party ("NPP") advocate whereas defendants ZORRILLA and ALVARADO belong to the Popular Democratic Party ("PDP").

### III. THE CLAIMS

Plaintiff contends that her transfer was tantamount to a constructive dismissal and demotion, responding to no real government needs. She also claims that in her new position she has not been assigned any managerial and/or supervisory work in accord with the description of duties for the position but rather has been occasionally given menial clerical tasks to carry out. Plaintiff alleges that the rest of the time she remains idle at her desk without any actual duties or responsibilities. Specifically, she notes that "[o]f the tasks and responsibilities included in the job description of Manager of Operational Administration, plaintiff has never been assigned the same and has not performed the same at any moment."[1]

According to plaintiff, the underlying reasons used by ACAA for creating the two new positions in the Operations Department are non-existent. No real and necessary functions have been identified nor any adequate of valid evaluation was carried out to properly determine the needs warranting the new manager positions.

Defendants, on the other hand, deny any improper motive and argue that plaintiff has failed to assert a valid claim because plaintiff's new position was created due to a reorganization in ACAA's Operations Department and was within the same scale as her previous position in the Human Resources Office. Also, her salary remained intact. Defendants further contend plaintiff's transfer was because of the necessity of service in accordance with applicable ACAA Regulations.

### IV. CONSTRUCTIVE DISMISSAL

At ¶ 17 of the complaint plaintiff alleges that her "demotion to a position different to which she was entitled without any supervisory functions nor any apparent duties, constituted a **constructive dismissal**." (Emphasis ours).

■ This allegation borders on conduct subject to sanctions against counsel personally. There is absolutely no factual basis for this assertion inasmuch as plain-

---

**1.** Plaintiff's Statement of Facts docket (No. 69) ¶ h.

tiff has never resigned from employment at ACAA. As the term unequivocally connotes, the *sine qua non* requirement for a constructive discharge claim is that a plaintiff is compelled to leave his or her employment.

> [T]he purpose of the constructive discharge doctrine [is] to protect employees from conditions so unreasonably harsh that a reasonable person would feel compelled to leave the job. The doctrine reflects the sensible judgment that employers charged with employment discrimination ought to be accountable for creating working conditions that are so intolerable to a reasonable employee as to compel that person to resign.

*Ramos v. Davis & Geck, Inc.,* 167 F.3d 727, 732 (1st Cir.1999).

In order to establish a claim based on constructive discharge "plaintiff must prove that his employer imposed working conditions so intolerable that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities." *Landrau–Romero v. Banco Popular De P.R.,* 212 F.3d 607, 613 (1st Cir. 2000) (citations and internal quotations omitted); *Simas v. First Citizens' Fed. Credit Union,* 170 F.3d 37, 46 (1st Cir. 1999); *Serrano–Cruz v. DFI·Puerto Rico, Inc.,* 109 F.3d 23, 26 (1st Cir.1997). *See also, Melendez–Arroyo v. Cutler–Hammer de P.R. Co., Inc.,* 273 F.3d 30, 36 (1st. Cir.2001) ("treatment so hostile or degrading that no reasonable employee would tolerate continuing in the position").

The "subjective perceptions" of the employee are insufficient. The reasonableness of plaintiff's decision to leave his employment is an objective one and will be examined based on the ability to "present sufficient evidence to allow the jury to credit his claim that a reasonable employee would have felt compelled to resign under the circumstances," *Ramos v. Davis &*

*Geck, Inc.,* 167 F.3d at 731 and "cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held." *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 28 (1st Cir.2002). *See also, Serrano–Cruz,* 109 F.3d at 26 (applying "objective standard" in examining employer's actions).

Likewise, discriminatory intent is not part of the probative calculus for this particular type of claim. Thus, plaintiff is not required to present "proof that the employer created the intolerable work conditions with the specific intent of forcing the employee to resign." *Ramos v. Davis & Geck, Inc.,* 167 F.3d at 732.

Based on the foregoing, plaintiff's claim for constructive discharge is **DISMISSED**.

## V. SECTION 1983

Section 1983 does not create substantive rights but is rather a procedural mechanism for enforcing constitutional or statutory rights. *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The statute, i.e., § 1983 "'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred... by the United States Constitution and federal statutes.'" *Rodriguez–Garcia v. Municipality of Caguas,* 354 F.3d 91, 99 (1st Cir.2004) (citing *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). Hence, it is plaintiffs' burden to identify the particular underlying constitutional or statutory right that is sought to be enforced via judicial proceedings.

In order to prevail in a § 1983 claim plaintiff must bring forth evidence that (1) defendant acted "under color of state law" and (2) deprivation of a federally protected right. *Rogan v. City of Boston,* 267 F.3d 24 (1st Cir.2001); *DiMarco–Zappa v. Cabanillas,* 238 F.3d 25, 33 (1st Cir.2001);

*Collins v. Nuzzo,* 244 F.3d 246 (1st Cir. 2001); *Barreto–Rivera,* 168 F.3d at 45.

There is no controversy over the fact that the named defendants were acting within the scope of their duties as state officials at all relevant times. Therefore, the first element is satisfied. We must then ascertain whether plaintiff was deprived of any federally protected right as a result of the events alleged in the complaint.

## A.  Due Process

Plaintiff alleges a deprivation of property rights without due process. Property interests, however, are not created by the Constitution but derive instead from state law provisions. "In order to establish a constitutionally-protected property interest, a plaintiff must demonstrate that she has a legally recognized expectation that she will retain her position." *Santana v. Calderon,* 342 F.3d 18, 24 (1st Cir.2003). "Under the Due Process Clause of the Fourteenth Amendment, persons who possess a property interest in continued public employment cannot be deprived of that interest without due process of law." *Figueroa–Serrano v. Ramos–Alverio,* 221 F.3d 1, 6 (1st Cir.2000). "Puerto Rican law grants a property interest in employment to career employees." *Id.*

In this particular case plaintiff's property interest in employment has not been put at issue by the defendants. Hence, we shall proceed to ascertain whether the aforementioned constitutional guarantee was breached.

█ Plaintiff's argument in support of her due process claim is limited to a procedural due process discussion and citing *Cleveland Bd. of Educ. v. Lourdermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494. "At a minimum, due process rights entitle such individuals to 'notice and meaningful opportunity to respond' prior to [the change in employment status]". *Figueroa–Serrano,* 221 F.3d at 5–6 (citing *Kercado–Melendez v. Aponte–Roque,* 829 F.2d 255, 263 (1st Cir.1987)).

In the **April 27, 2001** notice transferring plaintiff to a position in the Operations Department she was given notice of the procedural safeguards available to her to challenge the Agency's determination. Specifically, the letter apprised plaintiff that she had 30 days to request a hearing in the event that she was not in agreement with the change. Defendant submitted a declaration from MABEL ALVARADO vouching for the fact that plaintiff never challenged her transfer through the administrative mechanisms in place at ACAA.[2] Plaintiff has failed to contest this assertion.

Accordingly, we find that no legal grounds exist to support plaintiff's procedural due process claim inasmuch as she had available a constitutionally adequate administrative process to challenge the transfer. Accordingly, the due process claim is therefore **DISMISSED**.

Dismissal of the due process claim, however, does not dispose of the political discrimination allegations subject to First Amendment protection. *See, Gomez v. Rivera Rodriguez,* 344 F.3d 103, 111 n. 5 (1st Cir.2003) (discussing difference between the two causes of action). "Public employees can never be fired in violation of their First Amendment rights." *Id.*

## B.  First Amendment

Plaintiff alleges that her transfer, which was tantamount to a *de facto* demotion, responded to improper political motives.

█ Political discrimination in employment is conduct proscribed by the First

---

**2.** Defendants' Motion for Summary Judgment (docket No. 67) Exh. 7.

Amendment. "It is now well established that political patronage restrains freedom of belief and association, core activities protected by the First Amendment." *Padilla–Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000).

Our initial inquiry in this case is to determine whether plaintiff's particular job was shielded from political bias or whether, on the other hand, she held a "policy-making position" or a "position of unusual confidence" which do allow for political affiliation as an appropriate consideration when making personnel-related decisions. *Gomez v. Rivera Rodriguez,* 344 F.3d at 110; *Padilla–Garcia,* 212 F.3d at 74. "Public employees who do not hold confidential policy-making positions are protected from adverse employment actions based on political affiliation." *Figueroa–Serrano,* 221 F.3d at 7. *See, Duriex–Gauthier v. Lopez–Nieves,* 274 F.3d 4, 11 (1st Cir.2001) ("position is one in which political affiliation is a reasonably necessary requirement").

No claim has been made in this case that plaintiff held a policymaking position prior to her transfer nor one that would demand confidentiality. Accordingly, we conclude that plaintiff's political views could not be considered in the transfer determination.

The protection against political patronage practices resulting in dismissals initially validated in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), was subsequently extended to also cover promotions, transfers, recalls or hiring decisions in *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). *Rutan* specifically ruled that "promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights

of public employees." 497 U.S. at 75, 110 S.Ct. 2729.

In order to determine whether or not plaintiff was the victim of objectionable political patronage we must follow the *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) route which places the initial burden upon plaintiff who must present sufficient evidence to establish that "political affiliation was a substantial or motivating factor in the decisional calculus." *Gomez v. Rivera Rodriguez,* 344 F.3d at 110; *Padilla–Garcia,* 212 F.3d at 74. *See also, Figueroa–Serrano,* 221 F.3d at 7 (constitutionally protected conduct substantial factor in the decision).

"If the plaintiff satisfies this burden the devoir of persuasion shifts to the defendants to prove that they would have taken the same action regardless of plaintiff's political affiliation." *Gomez v. Rivera Rodriguez,* 344 F.3d at 110, "commonly referred to as the Mt. Healthy defense." *Padilla–Garcia,* 212 F.3d at 74.

■ Merely juxtaposing plaintiff's political affiliation with a claim that she was treated unfairly will not suffice to meet the causation requirement. *Id.; Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 58 (1st Cir.1990).

Similarly, the mere fact that the defendants charged with the discriminatory conduct belong to a different political party is insufficient for plaintiff to meet his burden and avoid summary disposition of a patronage claim. *Figueroa–Serrano,* 221 F.3d at 7–8; *Kauffman v. P.R. Tel. Co.,* 841 F.2d 1169, 1172 (1st Cir.1988).

■ An "assertion about statements of political affiliation—unaccompanied by any specific factual information to support [a political discrimination] claim, and unrelated to any employment action taken by [defendant] against [plaintiff]—is patently

insufficient to establish an act of political discrimination." *Lopez–Carrasquillo,* 230 F.3d at 414. However, plaintiff is not required to prove her discrimination claim by direct evidence. "In a political discrimination case, the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." *Padilla–Garcia,* 212 F.3d at 77. Circumstantial evidence of politically-based discriminatory animus may suffice if, when considered in *toto,* would allow a rational jury to make a reasonable inference of improper motive. *Acosta–Orozco v. Rodriguez–de–Rivera,* 132 F.3d 97, 101–02 (1st Cir.1997); *Anthony v. Sundlun,* 952 F.2d 603, 605–06 (1st Cir.1991).

■ On a motion for summary judgment scenario plaintiff must produce sufficient evidence for a reasonable fact finder to infer that her political affiliation was a substantial or motivating factor behind the employment practice in controversy. Thus, the defendant "bears the burden of persuading the factfinder that his/her reason for the adverse employment action is credible." *Reyes Canada v. Rey Hernandez,* 286 F.Supp.2d 174, 178 (D.P.R.2003).

The probative onus placed on the parties in political discrimination cases differs from that required in employment discrimination suits brought under Title VII. "In contrast [to Title VII suits],[3] under the Mt. Healthy analysis for political discrimination, the burden of persuasion passes to the defendant-employer once the plaintiff produces sufficient evidence of her prima facie case. In other words, the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons." *Padilla–Garcia,* 212 F.3d at 78 n. 8 (citations and internal quotation marks omitted).

### (1) The Parties' Memoranda

■ Plaintiff challenges her transfer—which she characterizes as a demotion. Defendants, on the other hand, deny discriminatory animus and claim instead that plaintiff's transfer was premised on valid objective criteria grounded on the "needs" of the Agency and executed pursuant to its Personnel Regulations. They argue the position of Manager of Operations Administration was created based on a bona fide reorganization in that Department.

Additionally, defendants allege plaintiff's new position at the Operations Department was not unreasonably inferior to the one she previously held inasmuch as it was within the same scale with the same salary.

### (2) Plaintiff's Evidence of Political Animus

Defendants have not disputed the fact that plaintiff MARIBEL CONCEPCION and defendants belong to opposing political parties[4] and that they were personally

---

3. In Title VII suits plaintiff retains the burden of persuasion throughout the litigation with defendant's duty limited to a proffer of non-discriminatory reasons. Thus, in Title VII discrimination cases, once plaintiff meets the threshold of prima facie discrimination "only a limited burden of production passes to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The employer under Title VII need not submit sufficient evidence to persuade the fact-

finder because the plaintiff retains the burden of persuasion at all times." *Padilla–Garcia,* 212 F.3d at 78 n. 8 (citations and internal quotation marks omitted).

4. Codefendant FRANK ZORRILLA is a longtime PDP supporter. *See,* Plaintiff's Opposition (docket No. 69) Exh. XI pp. 7–10. So is codefendant MABEL ALVARADO. *See,* Plaintiff's Opposition (docket No. 69) Exh. XIII pp. 48 and 50.

aware of plaintiff's political affiliation prior to the transfer at issue. In any case, plaintiff has proffered ample evidence of her long prior history of active participation in partisan politics, a well-known fact at ACAA[5] and to defendants personally.[6]

The highly charged political tone at ACAA subsequent to the change in government was also noted. MARIA LOPEZ PACHECO, plaintiff's co-worker, described the tense mood prevailing at ACAA after the 2000 elections when the PPD party overthrew the NPP governor then in power. According to the deponent, prior to the elections there was a "cordial and professional atmosphere" amongst all employees. However, as soon as the elections were over the PDP supporters became "euphoric", would dress in red and wear pins with the party's insignia. The situation was described as "very tense" and MABEL ALVARADO would no longer speak or greet NPPs. ACAA became completely polarized with each political faction keeping to itself.[7] Plaintiff also submitted evidence indicating that the PDP sympathizers viewed her as a stumbling block in the Human Resources Office

because she would be dealing with the new appointments to the Agency.[8]

LUIS CARRION LOPEZ, Director of the Human Resources Area until the 2000 elections and a member of ACAA's Transition Committee, testified that when codefendant MARIBEL ALVARADO was appointed Director of Human Resources she held a staff meeting and informed the office personnel that some of the tasks previously performed by plaintiff as Manager of Human Resources such as the office budget and work plan would be reassigned. Further, "as the week passed... [plaintiff] began to stop doing some of the tasks that she normally had been performing." She was asked to turn over the roster of ACAA employees and would no longer be responsible for the selection and recruitment of personnel.[9]

### (3) The Transfer

FELIX GONZALEZ SANTIAGO,[10] a PPD member, was the Director of the Operations Department for approximately 10 months commencing on or about **March 20, 2001**. On **April 18, 2001** MR. GONZALEZ SANTIAGO submitted a memorandum to ZORRILLA justifying a reorgani-

---

**5.** ELBA A. VALLES PEREZ, a co-worker, vouched that plaintiff's political affiliation was known by everyone at ACAA. Id. Exh. VI pp. 22–3. This was confirmed by MARIA LOPEZ PACHECO, also a co-worker, who indicated that "at ACAA everybody knows who is PNP and who is Popular [PDP]". MS. LOPEZ PACHECO also detailed plaintiff's active role in involving fellow NPP ACAA employees in partisan events. Plaintiff's Opposition (docket No. 69) Exh. VII pp. 30–31. *See also,* deposition testimony of CARMEN ZAYAS ORTIZ. Plaintiff's Opposition (docket No. 69) Exh. VIII pp. 33–37.

**6.** FERMIN SAGARDIA testified in his deposition that in February 2001 he personally met with codefendant ZORRILLA in an attempt to intercede on plaintiff's behalf so as to allow her to continue with her position at the Human Resources Office but that ZORRILLA

allegedly spurned his proposal claiming that plaintiff was a "political activist". Plaintiff's Opposition (docket No. 69) Exh. V pp. 37–38.

**7.** Plaintiff's Opposition (docket No. 69) Exh. VII pp. 28–29.

**8.** According to the deposition testimony of CARMEN ZAYAS ORTIZ, JUAN GUARDIN ROSA, Maintenance Supervisor, indicated that plaintiff "was not to be dealing with [the new appointments]." Plaintiff's Opposition (docket No. 69) Exh. VIII p. 35.

**9.** Deposition of LUIS CARRION LOPEZ. Plaintiff's Opposition (docket No. 69) Exh. X pp. 47–48.

**10.** Plaintiff's Opposition (docket No. 69) Exh. XV.

zation of his department and the creation of two manager positions. A detailed list of the proposed duties of the new positions were included in the memorandum. Two days later, on **April 20, 2001**, MABEL ALVARADO recommended this matter to FRANK ZORRILLA for his approval and on **April 27, 2001** plaintiff was notified of her transfer effective **May 1, 2001**.

According to MR. GONZALEZ SANTIAGO, MS. ALVARADO recommended plaintiff for the position.

Codefendant MABEL ALVARADO,[11] a PDP supporter, and Director of Human Resources at the time of the events charged in the complaint, acknowledged that she felt upset upon the appointment of MS. CONCEPCION to head the Human Resources Department back in **September 1999** because she expected to be the one named to the position. According to the deponent she had filed an administrative grievance in **1996** charging her reclassification from Manager of Industrial Relations to Human Resources Specialist based on a Reclassification Plan was tantamount to a politically motivated demotion.

MS. ALVARADO participated in the process culminating in plaintiff's transfer at issue in this case. According to the deponent, she evaluated the petition made by FELIX GONZALEZ, Director of Operations, for a new manager position. MS. ALVARADO testified that MR. GONZALEZ submitted a list of duties to be performed and the position was created in accordance thereto. She then evaluated candidates for the position and recommended plaintiff.

Codefendant FRANK ZORRILA indicated that he approved plaintiff's transfer upon the recommendation of codefendant MABEL ALVARADO and the Director of the Operations Department. Prior to the approval he had discussed plaintiff's transfer with MABEL ALVARADO but very briefly since personnel needs were handled through the Human Resources Office.[12]

EVA LOPEZ CUMBA[13] testified that she was recruited by codefendant MABEL ALVARADO where she commenced as Human Resources Specialist on **March 26, 2001**. MS. LOPEZ CUMBA, a PPD sympathizer, had previously worked with codefendant ALVARADO at the Administration of Municipal Services Administration. According to the deponent, she received instructions directly from codefendant ALVARADO and substituted her when on vacations. MS. LOPEZ CUMBA also participated in the creation of the position of Manager of Operations Administration.

### (4) No Duties

There is ample evidence that in her new position plaintiff was assigned no managerial duties.

ELISA MARQUEZ ACEVEDO, who was already working in the Operations Department when plaintiff was transferred thereto and sat almost across from plaintiff's office specifically noted that from the time MARIBEL CONCEPCION was transferred up to late April 2002 plaintiff had no functions assigned and had nothing to do. "[S]he wasn't doing anything. She had nothing on her desk. All the time taking pills for the nerves and de-

---

11. Plaintiff's Opposition (docket No. 69) Exh. XIII.

12. Deposition of FRANK ZORRILLA. Plaintiff's Opposition (docket No. 69) Exh. XI pp. 14–16.

13. Plaintiff's Opposition (docket No. 69) Exh. XIV.

pressed... I saw her reading the newspaper."[14]

MS. MARQUEZ ACEVEDO further indicated that approximately on **April 24, 2002** she was called to a meeting by JUAN CIRINO, the Director at the time, who informed them that plaintiff would be MS. MARQUEZ ACEVEDO's supervisor. Prior to that meeting plaintiff had no functions assigned and even thereafter she had no tangible supervisory responsibilities. According to MS. MARQUEZ ACEVEDO plaintiff exercised no supervision over her or any other employee in the Operations area.[15]

Additionally, MS. MARQUEZ ACEVEDO testified that FELIX GONZALEZ, the former Operations Department Director, also PDP member, had no professional relationship with plaintiff. He did not "greet and almost never talked to [plaintiff]." She never saw MR. GONZALEZ approach plaintiff "in relation to her functions or anything."[16] Specifically, the deponent noted:

> Well, what I mean is that I did not see that relationship between... between her and the boss; Him assigning functions or ... him delegating to her. Nothing like that. Simply, she was all the time in her office.[17]

MR. GONZALEZ SANTIAGO also acknowledged in his deposition that plaintiff was not doing any work. Further, he conceded that even though he allegedly received the job description for plaintiff's position in **May 2001** it was not until **November 6, 2001** that he finally handed her the document. He explained the delay alleging that he had forgotten to do it "due to an involuntary oversight".[18]

On **October 30, 2001** plaintiff requested MR. GONZALEZ SANTIAGO in writing a written description of the duties of her position and assignment of the corresponding work.[19]

On **February 27, 2002** plaintiff wrote a letter to FRANK ZORRILLA confirming a prior conversation with him and complaining of not being assigned any tasks or duties corresponding to her position.[20]

**(5) Unreasonably Inferior to the Norm**

■ In *Agosto–de–Feliciano v. Aponte–Roque*, 889 F.2d 1209, 1218 (1st Cir.1989) the Court of Appeals ruled that the First Amendment's protection extends to situations in which employment changes brought about by the employer—albeit not as extreme as dismissal—result in working conditions " 'unreasonably inferior' to the norm for the position" at issue.

The current status of the "unreasonably inferior" doctrine applied in cases of "discrimination short of actual demotion" after *Rutan* has not been addressed by the First Circuit Court of Appeals. *See, Acosta–Orozco*, 132 F.3d at 101 n. 5. However, it has been routinely applied at the district court level. *See, Reyes Canada*, 286 F.Supp.2d at 180 ("whether [p]laintiff's allegations amount to an altered work environment that is 'unreasonably inferior to

---

14. Plaintiff's Opposition (docket No. 69) Exh. IX pp. 40–41.

15. Plaintiff's Opposition (docket No. 69) Exh. IX pp. 40–42.

16. Plaintiff's Opposition (docket No. 69) Exh. IX pp. 43–44.

17. Plaintiff's Opposition (docket No. 69) Exh. IX p. 44.

18. Plaintiff's Opposition (docket No. 69) Exh. XV p. 89.

19. Plaintiff's Opposition (docket No. 69) Exh. XVI.

20. Plaintiff's Opposition (docket No. 69) Exh. XII.

the norm' is a question of act for the jury."); *Acevedo–Garcia v. Vera–Monroig,* 170 F.Supp.2d 169, 172 (D.P.R.2001) (internal citation omitted) ("record must contain evidence which would allow the fact finder to conclude... that the employee's new position is 'unreasonably inferior to the norm'"). *See also, Pagan–Cuebas v. Vera–Monroig,* 91 F.Supp.2d 464 (D.P.R.2000); *Morales–Narvaez v. Rossello,* 852 F.Supp. 104 (D.P.R.1994); *Cabrero v. Ruiz,* 826 F.Supp. 591 (D.P.R.1993); *Agosto,* 800 F.Supp. at 1033.

### (6) Conclusion

Plaintiff has proffered sufficient facts to conclude that her transfer is tantamount to a demotion and that the position she is currently holding is "unreasonably inferior" to the norm for a manager position which precludes summary judgment on this matter. It is evident from the evidence submitted by plaintiff that the underlying facts and motives behind the transfer as well as her working conditions in her new position are in controversy. Whether her duties as Manager of Operations Administration as well as the circumstances under which she was expected to perform are equal or similar to those expected for that position cannot be decided under the summary judgment vehicle.

Based on the evidence filed by plaintiff we find that a fact finder could reasonably infer that party affiliation was a substantial or motivating factor in defendant's decision to move her out of the Human Resources Office. Faced with the overwhelming proof of political animus submitted by plaintiff there is a genuine dispute of fact as to the genuineness of the reasons proffered by the defendants for the switch in plaintiff's employment.

Additionally, plaintiff has also presented ample proof to support her claim that she was not assigned any managerial or supervisory duties nor any of the responsibilities corresponding to the position she is currently occupying.

Accordingly, the request for dismissal of plaintiffs' First Amendment claim is **DENIED**.

## VI.  QUALIFIED IMMUNITY

■  Qualified immunity protects public officials from personal liability for determinations made in situations where the rights at issue are not unequivocally established. "Qualified immunity specially protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment." *Santana v. Calderon,* 342 F.3d at 23 (quoting *Ryder v. United States,* 515 U.S. 177, 185, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995)).

This protection seeks to ensure that prior to engaging in particular conduct public officers have advance notice of whether or not it would violate clearly established law. *Santana v. Calderon,* 342 F.3d at 23. *See also, Duriex–Gauthier,* 274 F.3d at 9 ("the importance of providing certainty as to what are the clearly established rules of primary conduct for government officials.")

■  Qualified immunity is not merely a defense from constitutional claims asserted in a proceeding but rather shields a public officer from suit. *Saucier v. Katz,* 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Santana v. Calderon,* 342 F.3d at 23.

■  Qualified immunity will be denied where (1) the facts as proffered denote defendants violated a constitutional right, and (2) "the contours of this right [were] 'clearly established' under the then-existing law so that a reasonable officer would have known that his conduct was unlawful." *Id.; Duriex,* 274 F.3d at 9. *See also, Huertas Morales v. Agosto Alicea,* 278 F.Supp.2d 164, 172 (D.P.R.2003) (court

should first consider whether plaintiff has adduced a constitutional violation and if so, whether that particular right was clearly established at the time of the alleged breach.)  Hence, the request for immunity must be rejected if there is no issue as to the existence of a particular statutory or constitutional right which a reasonable public official should be aware of.

The qualified immunity inquiry must start with the court ascertaining whether or not plaintiff has pled sufficient facts to denote violation of a constitutional right. *Santana v. Calderon*, 342 F.3d at 23; *Duriex–Gauthier*, 274 F.3d at 9.

██ Defendants contend that they are entitled to the qualified immunity defense "because it was objectively reasonable for [them] to believe that any of their actions in participating in the process of plaintiff's transfer would not violate plaintiff's rights."[21]  They argue that plaintiff's transfer was "legitimate... not based on any political criteria, but rather on objective criteria grounded on ACAA's Personnel Regulations."[22]  Specifically, they state that "[t]here was an objective non-discriminatory reason for plaintiff's transfer and defendants had no reason to know that plaintiff's transfer would result in a violation of plaintiff's rights, assuming such a violation may be found."[23]  Further, they note that plaintiff was transferred to a new position within the same scale and no changes in her salary were effected.

There is no issue as to the status of the law at the time of the events giving rise to this litigation.  As previously discussed, protection from political patronage in government employment, including transfers, has been recognized at least since *Rutan* was decided in 1990, long before the events giving rise to this litigation occurred.  Additionally, defendants were expected to know that government employees may not be subjected to altered conditions of employment "inferior to the norm" for the position in question because of their political inclinations.

Because plaintiff has met her burden under Rule 56 of raising a genuine factual dispute regarding her conditions of employment and whether or not these were "unreasonably inferior to the norm" as well as presenting ample evidence of political animus defendants' request for qualified immunity is unavailing and is therefore, **DENIED.**

## VII.  CONSPIRACY CLAIM § 1985

Defendants have also requested dismissal of plaintiff's conspiracy claims asserted under 42 U.S.C. § 1985(3).[24]  In order to state a claim under § 1985(3) plaintiff "must allege the existence of (1) a conspiracy, (2) conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right" or

---

**21.** Defendants' Memorandum (docket No. 67) p. 29.

**22.** *Id.*

**23.** *Id.*

**24.** In pertinent part, § 1985(3) reads:
  If two or more persons ... conspire ... for the purpose of depriving ... any person

or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

privilege." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996).

Equal protection within the aforementioned provision specifically denotes conduct motivated by "some racial, or ... otherwise class-based, invidiously discriminatory animus". *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Aulson*, 83 F.3d at 3 ("conspiratorial conduct ... [must be] propelled by ... 'invidiously discriminatory animus.'") (citing *Griffin*). *See, Donahue v. City of Boston*, 304 F.3d 110, 122 (1st Cir.2002) (in order to prevail plaintiffs must present evidence that "(1) some class-based animus (usually racial) lay behind the conspirators' action, and (2) that the conspiracy was aimed at interfering with protected rights."); *Burns v. State Police Ass'n of Mass.*, 230 F.3d 8, 12 (1st Cir.2000). Subsequently, in *United Bhd. of Carpenters and Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Supreme Court narrowed the scope of § 1985(3) by specifically excluding "conspiracies motivated by economic or commercial animus". The Court, however, declined to rule on whether its protection extended to "any class or organization on account of its political views or activities". *Id.* at 838.

In this case plaintiff alleges defendants' conduct was motivated by her political affiliation. The debate of whether membership in a political party, absent racial bias, falls within the scope of a § 1985(3) protected class subsequent to *Scott* still continues [25] with some courts ruling in its favor [26] and others against it.[27]

■ The First Circuit Court of Appeals has not yet issued an opinion on this matter. However, previous decisions in this particular district have ruled against extending the scope of § 1985(3) to conspiracies based exclusively on political discriminatory animus. *See, Torres Ocasio v. Melendez*, 283 F.Supp.2d 505, 518 (D.P.R. 2003); *Reyes v. Municipality of Guaynabo*, 59 F.Supp.2d 305, 310 (D.P.R.1999); *Morales–Narvaez v. Rossello*, 852 F.Supp. 104, 114–5 (D.P.R.1994); *Rodriguez v. Nazario*, 719 F.Supp. 52, 55–6 (D.P.R.1989). This court accordingly, will follow suit.

Based on the foregoing, plaintiff's § 1985(3) conspiracy claim is hereby **DISMISSED**.

## VIII.  SUPPLEMENTAL CLAIMS

Defendants have also moved to dismiss the local torts claim asserted under our supplemental jurisdiction, 28 U.S.C. § 1367(a) alleging that (1) plaintiff has failed to "specifically allege[ ] any fault or negligence on the part of defendants... under Article 1802" and (2) that in the event that the court were to dismiss all federal causes of action dismissal is proper under § 1367(c). Memorandum of Law (docket No. 67) p. 26.

---

**25.**  *See,* Kenneth A.K. Martin, *The Sixth Circuit Takes a Stand: Conklin v. Lovely and the Protection under 42 U.S.C. § 1985(3) to Victims of Non-racial, Discriminatory Conspiracies*, 20 U. Tol. L.Rev. 733 (Spring, 1989) and E. Durden, *Republicans as a Protected Class?: Harrison v. KVAT Food Management, Inc. and the Scope of Section 1985(3)*, 36 Am. U.L.Rev. 193 (Fall, 1986) for an extensive discussion on this subject.

**26.**  Political association is a protected class. *Gleason v. McBride*, 869 F.2d 688, 695 (2nd Cir.1989); *Conklin v. Lovely*, 834 F.2d 543, 549–50 (6th Cir.1987); *Dohner v. Neff*, 240 F.Supp.2d 692, 705 (N.D.Ohio 2002); *Larkin v. Town of West Hartford*, 891 F.Supp. 719, 731 (D.Conn.1995).

**27.**  Political association is not a protected class. *Grimes v. Smith*, 776 F.2d 1359 (7th Cir.1985); *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir.1985); *Harrison v. KVAT Food Mgt. Inc.*, 766 F.2d 155 (4th Cir.1985); *D'Aurizio v. Palisades, Park*, 963 F.Supp. 387, 393 (D.N.J.1997) aff'd 151 F.3d 1024 (1998).

■ Art. 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141 (1990), governs tort liability in Puerto Rico. According to this provision, a person is liable for damages resulting from his/her negligent acts or omissions. In order to prevail plaintiff must establish: (1) a negligent act or omission, (2) damages, and (3) a causal relationship between them. *Irvine v. Murad Skin Research Laboratories, Inc.*, 194 F.3d 313, 321 –322 (1st Cir.1999); *De-Jesus–Adorno v. Browning Ferris Indus. of P.R., Inc.*, 160 F.3d 839, 842 (1st Cir. 1998); *Marshall v. Perez Arzuaga*, 828 F.2d 845, 847 (1st Cir.1987); *Pons Anca v. Engebretson*, 2003 TSPR 150, 2003 WL 22399583, *3–4; *Montalvo v. Cruz*, 144 D.P.R. 748, 755 (1998); *Toro Aponte v. E.L.A.*, 142 D.P.R. 464, 473 (1997).

■ The mere fact that injuries or damages ensue is not grounds for liability under art. 1802 for that would entail absolute liability. Defendants will be liable only for those reasonably foreseeable consequences to their conduct. *De–Jesus–Adorno*, 160 F.3d at 842; *Pons Anca*, 2003 TSPR 150, 2003 WL 22399583, *3–4; *Montalvo*, 144 D.P.R. at 755; *Toro –Aponte*, 142 D.P.R. at 473; *Ocasio Juarbe v. Eastern Airlines, Inc.*, 125 D.P.R. 410, 418 (1990) *official translation reproduced in full in* 902 F.2d 117 (1st Cir.1990); *Jimenez v. Pelegrina Espinet*, 112 D.P.R. 700, 704, 1982 WL 210615 (1982); *Pacheco v. A.F.F.*, 112 D.P.R. 296, 300 (1982).

The duty of care "is anticipating reasonably probable injuries to probable victims," *Irvine*, 194 F.3d at 322; "[the] failure to exercise due diligence to avoid foreseeable risks." *Malave–Felix*, 946 F.2d at 971.

■ A review of the facts as pled in the complaint easily meets the aforementioned criteria. Plaintiff has detailed intentional discriminatory conduct on the part of the individual defendants which has purportedly brought about unfavorable physical and emotional sequelae.[28] The evidence as proffered can lead a reasonable fact finder to conclude that the damages asserted by plaintiff were "reasonably foreseeable" to both defendants as a consequence of their intentional discriminatory acts.

Accordingly, the request to dismiss the art. 1802 claims is **DENIED**.

Inasmuch as we have rejected defendants' plea to dismiss all federal claims, the petition to decline supplemental jurisdiction is also **DENIED**.

## IX. CONCLUSION

Accordingly, defendants' Motion for Summary Judgment (docket No. 67)[29] is **GRANTED** with respect to the dismissal of the following claims: (1) constructive discharge, (2) due process, and (3) conspiracy under § 1985(3). Judgment shall be entered accordingly.

---

**28.** Family members of victims of employment discrimination have been found to have independent causes of action arising under art. 1802 for their own damages resulting from the discrimination suffered by a relative. *Santini–Rivera v. Service Air., Inc.*, 94 J.T.S. 121 (P.R.1994). "[T]he Puerto Rico Supreme Court has referred to that cause of action as flowing from, or 'contingent upon,' the underlying discrimination claim of the employee, although the cause of action is independently founded in the general tort provision of the civil code (Article 1802) and not in the anti-

discrimination laws." *Marcano–Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 258 n. 7 (1st Cir.2000).

**29.** *See,* Opposition (docket No. 69); Reply (docket No. 71); Sur–Reply (docket No. 73) and Motion Filing English Translations (docket No. 75). Plaintiff's Request for Leave to file Document in Spanish Language (docket No. 68) is **MOOT**. *See,* Motion Filing English Translations (docket No. 70).

The motion is **DENIED** regarding plaintiff's § 1983 political discrimination claim asserted under the First Amendment, the local negligence causes of action, and defendants' qualified immunity request.

IT IS SO ORDERED.